## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOB McNEIL, an individual, on behalf of himself, and all others similarly situated, | CASE NO. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| CAPITAL ONE BANK, N.A., | <u>JURY TRIAL DEMANDED</u> |
| Defendant. | |

Plaintiff Bob McNeil ("Plaintiff" or "Mr. McNeil"), on behalf of himself and all others similarly situated, by and through his counsel, brings this Class Action Complaint ("Complaint") against Defendant Capital One Bank, N.A. ("Capital One" or the "Bank"), and based upon personal knowledge with respect to himself, and on information and belief and the investigation of counsel as to all other matters, in support thereof alleges as follows:

## <u>INTRODUCTION</u>

1.      This case concerns Capital One's unlawful business practice of imposing multiple Non-Sufficient Funds Fees ("NSF Fee") and Overdraft Fees ("OD Fee") on a single transaction.

2.      Plaintiff brings this action on behalf of himself and all similarly situated consumers against Capital One, arising from a specific fee generation practice that violates the Bank's contracts and/or is deceptive.

3.      Three Capital One documents permit the Bank to charge a single $35 NSF Fee when it determines a customer's account contains insufficient funds to pay a transaction and it rejects the charge. *See* Rules Governing Deposit Accounts ("Deposit Agreement"), attached hereto as **Exhibit A**, Schedule of Miscellaneous Fees and Charges ("Fee Schedule") attached

hereto as **Exhibit B,** and the "Online Banking Agreement", attached as **Exhibit C** (collective "Account Documents").

4.       The Account Documents also permit Capital One to charge a single $35 OD Fee when it determines a customer lacks sufficient funds to pay a transaction, but it advances the funds and pays the transaction anyway.

5.       Through the imposition of NSF Fees and OD Fees (collectively referred to herein as "Account Fees") the Bank makes hundreds of millions of dollars annually often at the expense of its most vulnerable customers.

6.       Mr. McNeil does not dispute the Bank's right to either (a) reject a transaction and charge a *single* NSF Fee or (b) pay a transaction and charge a *single* OD Fee, but Capital One unlawfully maximizes its already profitable Account Fees with deceptive practices that also violate the express terms of its contract.

7.       Specifically, Capital One unlawfully: (a) assesses *multiple* NSF Fees; and/or (b) assesses *both* NSF Fees and an OD Fee on a single Automated Clearing House (ACH) transaction or check.

*8.*       Unbeknownst to consumers, each time Capital One reprocesses an ACH transaction or check for payment after it was initially rejected for insufficient funds, Capital One chooses to treat it as a new and unique item or transaction that is subject to yet another NSF Fee (or another OD Fee if it decides to pay the transaction). But Capital One's Account Documents never disclose that this counterintuitive and deceptive result could be possible and, in fact, suggest the opposite. Moreover, the premise is far from obvious as a matter of common sense and becomes even less so when one considers that Capital One's own bank statements sometimes refer to the re-attempted items are "*RETRY* PYMT"—i.e., mere iterations of the *same* initial item, not items *ex nihilo*.

*9.*     Capital One's Account Documents indicate that only a *single* NSF *or* OD Fee will be charged per "transaction" or "item," however, many times that item is reprocessed with no request from the customer to do so. An electronic item reprocessed after an initial return for insufficient funds, especially through no action by the customer, cannot and does not fairly become a new, unique item for fee assessment purposes, particularly here where Capital One reprocesses the items knowing there are insufficient funds to cover the items solely to cause additional fees and increase the Bank's profits at the expense of its customers.

10.     Capital One breaches its contract when it charges more than one $35 NSF Fee on the same item, since the contract explicitly states—and reasonable consumers understand—that the same *item* can only incur a *single* NSF Fee.

11.     The Bank similarly breaches its contract when it charges both a $35 NSF Fee (or multiple NSF Fees) and a $35 OD Fee on the same *item* since the contract explicitly states—and reasonable consumers understand—that the same item cannot incur *both* types of fees.

12.     Capital One also breaches its duty of good faith and fair dealing when it charges multiple Account Fees on a single transaction. Specifically, Capital One breaches its contracts and/or abuses its contractual discretion by: (a) processing transactions when it knows that a customer's account lacks sufficient funds; and (b) charging NSF Fees and/or OD Fees upon each reprocessing of the same item. In both instances, the customer has made no attempt to resubmit the payment.

13.     This practice not only violates Capital One's contracts and the covenant of good faith and fair dealing, but is also unfair and deceptive under the consumer protection law of New York (where Mr. McNeil is a citizen and resides).

14.     Mr. McNeil and other Capital One customers have been injured by these practices. On behalf of himself and the Classes, Mr. McNeil seeks damages, restitution and injunctive relief for Capital One's breach of contract and of the covenant of good faith and fair dealing, unjust enrichment, and violations of the New York consumer protection statute.

## PARTIES

15.     Plaintiff Bob McNeil is a citizen of New York, residing at all relevant times in Brooklyn, New York. He maintains a checking account at Capital One. At all times relevant, Plaintiff patronized Capital One banking centers located in Brooklyn, New York and other locations in the New York City area.

16.     Defendant Capital One is a national bank with its headquarters and principal place of business located in Arlington, VA. Among other things, Capital One is engaged in the business of providing retail banking services to consumers, including Mr. McNeil and members of the putative Classes. Capital One operates banking centers, and thus conducts business, throughout the State of New York, including within this District.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class (Mr. McNeil) is a citizen of a State different from the Defendant. The number of members of the proposed Classes in aggregate exceeds 100 accountholders. 28 U.S.C. § 1332(d)(5)(B).

18.     This Court has personal jurisdiction over the Defendant because Defendant's actions and omissions committed in or aimed at this District gave rise to the claims alleged in this Complaint. Also, Defendant regularly conducts and/or solicits business in, engages in other

persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District and in New York.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District—where Mr. McNeil lives and conducts his banking business with Capital One.

## SUBSTANTIVE ALLEGATIONS

20.     As alleged more fully herein, Capital One's Account Documents allow it to take certain steps when a Capital One accountholder attempts a transaction, but does not have sufficient funds to cover it. Specifically, the Bank may: (a) authorize the transaction and charge a *single* $35 overdraft fee ("OD Fee"); or (b) reject the transaction and charge a *single* $35 NSF Fee.

21.     In contrast to its Account Documents, however, Capital One regularly assesses two or more NSF Fees on the *same* item or transaction. Additionally, the Bank regularly assesses both NSF Fees and OD Fees on the same item or transaction.

22.     Oftentimes, Capital One engages in both forms of wrongdoing with respect to a single transaction, repeatedly rejecting, re-processing, and charging multiple NSF Fees on the transaction before finally authorizing it and then charging unsuspecting customers an additional OD Fee.

23.     These abusive and deceptive practices are not universal in the banking industry. Indeed, many major banks like Chase—the largest consumer bank in the country—do not charge repeated NSF Fees (or subsequent OD Fees) on the same item or transaction when it is reprocessed. Instead, Chase charges one NSF Fee even if an item is processed for payment multiple times.

24.     Capital One's Account Documents never disclose that the Bank undertakes these practices. To the contrary, the Bank's Account Documents indicate that it will only charge a single Account Fee on an item or per transaction.

## A.     Mr. McNeil's Experience

25.     In support of his claims, Mr. McNeil has numerous examples of NSF Fees and OD Fees that should not have been assessed against his checking account. On each of the occasions described *infra*, Capital One: (a) reprocessed a previously declined transaction; and (b) charged a fee upon reprocessing, regardless of whether the initial submission was authorized or declined.

26.     On January 9, 2018, Plaintiff attempted to make a one-time PayPal transfer in the amount of $43.80, via an ACH transaction.

27.     Capital One rejected payment of that item due to insufficient funds in Mr. McNeil's account and charged Plaintiff a $35 NSF Fee. Mr. McNeil does not dispute this initial fee, as it is allowed by the Bank's Account Documents.

28.     Unbeknownst to Mr. McNeil and without his request to Capital One to retry the transaction, however, eight days later, on January 17, 2018, Capital One processed the same transaction yet again, and again Capital One rejected the item due to insufficient funds and charged Plaintiff *another* $35 NSF Fee.

29.     *In sum, Capital One charged Plaintiff $70 in fees to process a single payment to PayPal of $43.80.*

30.     Plaintiff understood his PayPal transaction to be a single transaction as is laid out in Capital One's contract, capable at most of receiving a single NSF Fee (if Capital One returned it) or a single OD Fee (if Capital One paid it).

31.     Capital One itself also understood the PayPal transaction to be a single transaction, and its systems categorized it as a "RETRY PMT."

32.     On June 15, 2018, Plaintiff attempted to make a one-time PayPal transfer in the amount of $17.54, via an ACH transaction.

33.     Capital One rejected payment of that item due to insufficient funds and charged Plaintiff a $35 NSF Fee. Mr. McNeil does not dispute this initial fee, as it is allowed by the Bank's Account Documents.

34.     Unbeknownst to Mr. McNeil and without his request to Capital One to retry the transaction, however, seven days later, on June 22, 2018, Capital One processed the same transaction yet again, and this time Capital One paid the item into overdraft and charged Plaintiff another $35 Fee.

35.     *In sum, Capital One charged Plaintiff $70 in fees to process a single $17.54 payment to PayPal—a payment it could have simply authorized into overdraft and charged one fee.*

36.     Plaintiff understood his PayPal transaction to be a single transaction as is laid out in Capital One's contract, capable at most of receiving a single NSF Fee (if Capital One returned it) or single OD Fee (if Capital One paid it).

37.     Capital One itself also understood the PayPal transaction to be a single transaction, and its systems categorized it as such. Indeed, on Mr. McNeil's account statement, Capital One described subsequent attempts to debit the transaction as a "RETRY PYMT."

**B.  The Imposition of Multiple NSF Fees on a Single Transaction Violates The Bank's Express Promises and Representations**

38.     The Deposit Agreement provides the general terms of Mr. McNeil's relationship with the Bank and therein Capital One makes explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees and OD Fees may be assessed.

39.     The Deposit Agreement does not define the term "item" or "transaction," and never states the same "item" or "transaction" can cause multiple NSF Fees.

40.     Instead, the Deposit Agreement contains explicit terms indicating that NSF Fees will only be assessed once per transaction or "item"—defined as a customer request for payment or transfer—when in fact Capital One regularly charges two or more NSF Fees per transaction or item even though a customer only requested the payment or transfer once.

41.     Capital One's Account Documents state that it will charge $35 per "item" or transaction that is returned due to insufficient funds.

42.     As used throughout the Deposit Agreement, the term "item" or "transaction" describe all iterations of a given instruction for payment or deposit from a checking or savings account.

43.     According to the Deposit Agreement:

**Returning Items for Insufficient Funds**. *You do not have the right to write a check or draft, to make an ATM or other withdrawal, or to initiate or have an automatic debit processed against your account for an amount that exceeds your available balance* (If you're enrolled in an overdraft protection, we'll transfer available amounts to cover the transaction in accordance with the agreement governing your overdraft protection plan). At any time before final payment (as defined in the Uniform Commercial Code) we may return any check, draft, image, negotiable order of withdrawal, electronic debit or other item presented for payment against your account when there are insufficient available funds in your account to pay the item or if for some other reason the item is not good or payable. In addition, *we may charge a fee for each item returned* in accordance with our current Schedule of Fees and Charges. (Emphasis added.)

44.     This disclosure indicates "a" single fee may be charged "for each item returned" and indicates that an "item" is the result of an accountholder "writing," "making," or "initiating" a payment.

45.     Capital One's "Explanation of Various Key Services and Charges"  (attached

hereto as **Exhibit D**) states that a $35 NSF Fee may be assessed in the following circumstance:

> If we choose to decline a check or ACH *transaction* due to insufficient funds in your account. These *transactions* may be subject to additional charges or penalties charged by the payee. (Emphasis added.)

46.     A "transaction," like a check or ACH, is a request for payment by an accountholder. It does not become a new "transaction" when it is later reprocessed by Capital One.

47.     Moreover, the "Explanation of Various Key Services and Charges" states that "transactions" may suffer additional penalties by the payee, but never says additional charges may be imposed by Capital One for the same transaction.

48.     Capital One's separate Fee Schedule is flatly misleading, since it states that a $35 fee will only be charged when transactions "create an overdraft" in your account:

Non-sufficient Funds (NSF)/Overdraft (OD): $35

> We may charge your account *a fee for items drawn or transactions* effected that create an overdraft in your account. Transactions resulting in imposition of this fee can be created by check, in-person withdrawal, ATM withdrawal (if you have authorized us (also known as "opted in") to consider approving ATM withdrawals and every debit card transactions on your account when you don't have the available funds) or other electronic means and may be charged whether or not the item or transaction is paid. Additional miscellaneous fees may apply. Please refer to a current Schedule of Miscellaneous Fees and Charges available upon request at any of our banking offices. (Emphasis added.)

49.     But since a rejected payment attempt is not paid, it cannot create an overdraft on an account. This disclosure does not authorize any NSF Fees, much less more than one on the same transaction or item.

50.     Because Mr. McNeil only made one authorization for payment for all of his ACH transactions, there is no new "item" or "transaction" when that transaction is rejected then automatically reprocessed for payment by Capital One.

51.     A third Capital One account document, the "Online Banking Agreement", also confirms that the Bank will only charge one fee per "item" or "transaction." This document states:

> **"Payment Instruction"** is the information you provide for *a payment to be made* to a Biller through the Online Bill Pay Service (information such as, but not limited to, Biller name, Biller account number, and Scheduled Payment Date).
>
> . . . .
>
> **Failed or Returned Payment Instructions**
> In using the Service, you are requesting us to attempt to make payments for you from your Eligible Transaction Account. *If we are unable to complete the Payment Instruction for any reason associated with your Eligible Transaction Account* (for example, *there are insufficient funds in your Eligible Transaction Account*, or the Payment Instruction would exceed the credit or overdraft protection limit of your Eligible Transaction Account, to cover the payment), *the Payment Instruction may or may not be completed. In certain circumstances, we will attempt to debit the Eligible Transaction Account a second time to complete the Payment Instruction.* In some instances, you will receive a return notice from us. In each such case, you agree that:
>
> a. You will reimburse us or our Service Provider immediately upon demand the amount of the Payment Instruction if we have delivered the payment but there are insufficient funds in, or insufficient overdraft credits associated with, your Eligible Transaction Account to allow us to complete the debit processing;
>
> b. *You may be assessed <u>a fee</u> by our Service Provider and by us if the Payment Instruction cannot be debited because you have insufficient funds* in your Eligible Transaction Account, or the transaction would exceed the credit or overdraft protection limit of your Eligible Transaction Account, to cover the payment, or if we cannot otherwise collect the funds from you; the fee amount will be as set forth in your fee schedule from us (including as disclosed on the Site) or your account agreement with us. You hereby authorize us to deduct these amounts from your designated Eligible Transaction Account, including by ACH debit; . . . .

(Emphasis added.)

52.     For items conducted by Capital One customers through its online bill pay service, if there are insufficient funds to pay a "Payment Transaction," Capital One will either return or pay the transaction.

53.     Even in the undefined "certain circumstances" in which the Bank "will attempt to debit the Eligible Transaction Account a second time to complete the Payment Instruction," the agreement states the accountholder "may be assessed a fee by our Service Provider and by us if the Payment Instruction cannot be debited because you have insufficient funds in your Eligible Transaction Account," with the fee amount being that "set forth in your fee schedule."

54.     As with the other Account Documents, Capital One's chosen agreement language signals that "a fee" will be charged even if the online bill pay transaction is reprocessed. "A fee" means a "singular" fee.

55.     In sum, the same instruction for payment cannot conceivably become a new "item" each time it is rejected for payment and then reprocessed by Capital One.

56.     Even if Capital One reprocesses an instruction for payment, it is still the same "item" or "transaction." The Bank's reprocessing is simply another attempt to effectuate Mr. McNeil's original order or instruction.

57.     The disclosures described above never discuss a circumstance where Capital One may assess multiple NSF Fees for a single check or ACH transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

58.     In sum, Capital One promises that one $35 NSF Fee will be assessed per item or transaction, and "item" or "transaction" must mean all iterations of the same instruction for payment. As such, Capital One breached its contract when it charged more than one fee per item.

59.     Reasonable consumers understand any given authorization for payment to be one, singular "item" as that term is used in Capital One's Fee Schedule and Deposit Agreement.

60.     Upon information and belief, Capital One has this same understanding in practice, since its systems code items in a way that alerts the Bank when the same item or item is being reprocessed for payment.

61.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which the Bank will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Capital One disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do Capital One customers ever agree to such fees.

62.     Customers reasonably understand, based on the language of the Deposit Agreement and Capital One's other Account Documents, that the Bank's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees. In other words, it is always the same item or transaction.

**C.  Capital One May Not Charge Both OD and NSF Fees on a Single Transaction**

63.     Consistent with Capital One's express representations in its contracts, Plaintiff and reasonable consumers understand that any given instruction by them for payment to be one, singular transaction and one "item" as that term is used in Capital One's contract documents.

64.     Capital One's contract documents bar the Bank from assessing *both* NSF Fees and OD Fees on the same instruction for payment—but that is exactly what the Bank does.

65.     Capital One's Deposit Agreement makes clear that a given transaction can either be paid into overdraft <u>or</u> returned unpaid:

> For all checking accounts, we will consider paying your checks, ACH (such as your mortgage payment), bill payments, withdrawals and recurring debit card transactions (like your monthly gym payment) into overdraft *rather than* returning the item unpaid. (Emphasis added.)

66.     As alleged above, only a single fee of any type can be assessed on a given item or transaction.

67. Consistent with the Deposit Agreement, the Online Banking Agreement states, "the Payment Instruction may *or* may not be completed," and when it is completed despite insufficient funds in the account, it means Capital One pays the transaction, like it will have for another check or ACH transaction. This language also clearly indicates that the Bank will do one of two things when a customer lack sufficient funds: (a) pay the transaction and charge an OD Fee; *or* (b) reject the transaction and charge a NSF Fee.

68. Despite the fact that the terms of the Deposit Agreement, Fee Schedule, and Online Banking Agreement and Fee Schedule use starkly binary language, Capital One frequently pursues both options with respect to a single transaction. That is, it first rejects the transaction and charges a NSF Fee, then later authorizes the transaction and charges an OD Fee. Capital One does this to maximize fee revenue at the expense of its customers.

**D. The Imposition of Multiple NSF Fees or an NSF Fee and OD Fee on a Single Transaction Breaches Capital One's Duty of Good Faith and Fair Dealing**

69. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that the Bank is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the Bank has a duty to honor transaction requests in a way that is fair to Mr. McNeil and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor. Here—in the adhesion agreements the Bank foisted on Mr. McNeil and its other customers—Capital One has provided itself numerous discretionary powers affecting customers' bank accounts. But instead

of exercising that discretion in good faith and consistent with consumers' reasonable expectations, the Bank abuses that discretion to take money out of consumers' account without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

70.    As set forth in its Deposit Agreement the Bank "*may* charge *a fee* for each item returned in accordance with our current Schedule of Fees and Charges." (Emphasis supplied.) The Online Banking Agreement consistently states that the customer "may be assessed a fee." Capital One exercises its discretion in its own favor—and to the prejudice of Mr. McNeil and its other customers—when it reprocesses a transaction when it knows a customer's account lacks funds and then charges additional NSF Fees and/or both a NSF Fee and an OD Fee on a single item. Further, Capital One abuses the power it has over customers and their bank accounts and acts contrary to his reasonable expectations under the Deposit Agreement. This is a breach of the Bank's implied covenant to engage in fair dealing and act in good faith.

71.    Further, Capital One maintains complete discretion not to assess NSF Fees or OD Fees on transactions at all. As alleged in the previous paragraph, the Bank "may charge a fee" or "You may be assessed a fee." By exercising its discretion in its own favor—and to the prejudice of Ms. McNeil and other customers—by charging more than one NSF Fee, or both a NSF Fee and OD Fee, on a single item, Capital One breaches the reasonable expectation of Mr. McNeill and other customers and in doing so violates the implied covenant to act in good faith.

72.    Capital One's exploitation of its contractual discretion to the detriment of accountholders and resulting breaches good faith and fair dealing is also pronounced when it charges both NSF Fees and an OD Fee on the same item or transaction.

73.    <u>First</u>, Capital One engages in a pattern of initially rejecting, then approving, the same items in order to maximize fee revenue.

74.     As alleged in the example above, Capital One exercised discretion to reject payment on the first iteration of Mr. McNeil's $17.54 Paypal transfer because Plaintiff purportedly had insufficient funds in his account. But it approved the second iteration of the same transaction even though Plaintiff still purportedly lacked sufficient funds and was in fundamentally the same financial position.

75.     The reject-then-approve pattern used by Capital One has one purpose: to maximize fee revenue for the Bank.

76.     Capital One's Deposit Agreement provides the Bank with significant discretion as to whether to pay or reject an insufficient funds transaction (and charge a corresponding fee):

> When deciding to pay debit transactions that cause an overdraft, we consider a variety of factors, including the size of the transaction, whether your account is in good standing and/or your history with us, including whether you've previously had too many overdrafts on your account(s). We also consider the type of overdraft service you have on your account.

77.     In addition to the discretion as to whether to pay or reject a transaction, Capital One also provides itself significant discretion as to whether or not to charge a single Account Fee on a given transaction.

78.     By exercising its discretion in its own favor—and to the prejudice of Mr. McNeil and other customers—by engaging in its "reject, then approve into overdraft" pattern, Capital One abuses the power it has over Mr. McNeil and its other customers and acts contrary to their reasonable expectations under the Deposit Agreement. This is a breach of the Bank's implied covenant to engage in fair dealing and act in good faith.

## CLASS ALLEGATIONS

79.     Mr. McNeil brings this action on behalf of himself and all others similarly

situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

80.     The proposed "Classes" are defined as:

**Class 1 – Nationwide Multiple NSF Class**
All Capital One checking account holders in the United States who, during the applicable statute of limitations, were charged multiple NSF Fees on an item (the "Multiple NSF Class").

**Subclass 1 – New York Multiple NSF Subclass**
All Capital One checking account holders in New York who, during the applicable statute of limitations, were charged multiple NSF Fees on an item (the "New York Multiple NSF Subclass").

**Class 2 – Nationwide NSF and OD Class**
All Capital One checking account holders in the United States who, during the applicable statute of limitations, were charged an NSF Fee and an OD Fee on the same item (the "NSF/OD Class").

**Subclass 2 – New York NSF and OD Subclass**
All Capital One checking account holders in New York who, during the applicable statute of limitations, were charged an NSF Fee and an OD Fee on the same item (the "New York NSF/OD Class").

Hereinafter, the Classes and Subclasses are collectively referred to as the "Classes."

81.     Mr. McNeil reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

82.     Specifically excluded from the Classes are any entities in which Capital One has a controlling interest, or which have a controlling interest in Capital One, Capital One's legal representatives, assigns, and successors, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family.

83.     The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identities of whom are within the exclusive knowledge of Capital One and can be readily ascertained only by resort to Capital One's records.

84.     The claims of the representative plaintiff are typical of the claims of the Classes in that the representative plaintiff, like all members of the Classes, was charged multiple NSF Fees and/or both a NSF Fee and an OD Fee on a single transaction. The representative plaintiff, like all members of the Classes, has been damaged by Capital One's misconduct in that he has been assessed unfair and unconscionable NSF and OD Fees. Furthermore, the factual basis of Capital One's misconduct is common to all members of the Classes and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes. Mr. McNeil has suffered the harm alleged and has no interests antagonistic to the interests of any other members of the Classes.

85.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes.

86.     Among the questions of law and fact common to the Classes include:

a.      Whether Capital One violated its own contract provisions by charging multiple NSF Fees on the same transaction;

b.      Whether Capital One violated its own contract provisions by charging both a NSF Fee and an OD Fee on a single item;

c.      Whether Capital One breached its covenant of good faith and fair dealing with Mr. McNeil and other members of the Classes through its Account Fee policies and practices;

d.      Whether Capital One was unjustly enriched through its Account Fee policies and practices;

e.      Whether Capital One violated the consumer protection law of New York

through its Account Fee policies and practices;

       f.     The proper method or methods by which to measure damages; and

       g.     The declaratory and injunctive relief to which the Classes are entitled.

87.    Mr. McNeil is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions, particularly on behalf of consumers and against financial institutions. Accordingly, Mr. McNeil is an adequate representative and will fairly and adequately protect the interests of the Classes.

88.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual class member's claim is small relative to the complexity of the litigation, no class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Classes will continue to suffer losses and Capital One's misconduct will proceed without remedy.

89.    Even if class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows for the consideration of claims which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

90.    Plaintiff suffers a substantial risk of repeated injury in the future. Plaintiff, like all members of the Classes, is at risk of additional Account Fees on repeated reprocessing of

transactions. Plaintiff and the members of the Classes are entitled to injunctive and declaratory relief as a result of the conduct complained of herein. Money damages alone could not afford adequate and complete relief, and injunctive relief is necessary to restrain Capital One from continuing to commit its unfair and illegal actions.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of the Classes)**

91.     Mr. McNeil realleges and incorporates by reference all the foregoing allegations as if they were fully set forth herein.

92.     Mr. McNeil and Capital One have contracted for bank account services, as embodied in Capital One's Deposit Agreement and related documentation.

93.     Capital One's account documents explicitly state that, when a customer lacks sufficient funds to cover a transaction, the Bank may either: (a) authorize the transaction and charge a single OD Fee; or (b) reject the transaction and charge a single NSF fee. Capital One regularly violates its contractual promises by charging multiple NSF Fees and/or both a NSF Fee and an OD Fee on a single transaction.

94.     Under the laws of the states where Capital One does business, parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations. That means that the Bank is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the Bank has a duty to honor transaction requests in a manner

that is fair to Mr. McNeil and members of the Classes and is prohibited from exercising its discretion to pile on ever greater penalties. Here—in the form agreements the Bank foisted on Mr. McNeil and members of the Classes—Capital One has provided itself numerous discretionary powers affecting customers' bank accounts.

95.     Instead of exercising that discretion in good faith and consistent with customers' reasonable expectations, the Bank abuses that discretion to take money out of customers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple NSF Fees and/or a NSF Fee and an OD Fee for the same transaction. Specifically, Capital One regularly: (a) reprocesses previously declined transactions, even when Capital One knows a customer's account lacks sufficient funds; and (b) charges Capital One Account Fees upon reprocessing of previously declined transactions.

96.     Capital One further breaches the covenant of good faith and fair dealing by charging more than one NSF Fee and/or a NSF Fee and an OD Fee on a single transaction.

97.     By exercising its discretion to enrich itself by gouging its consumers, Capital One consciously and deliberately frustrates the agreed common purposes of the contract and disappoints the reasonable expectations of Mr. McNeil and members of the Classes, thereby depriving them of the benefit of their bargain.

98.     Mr. McNeil and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement.

99.     Mr. McNeil and members of the Classes have sustained damages as a result of Capital One's breaches of the Deposit Agreement.

**SECOND CLAIM FOR RELIEF**
**New York General Business Law, N.Y. Gen. Bus. Law § 349 *et***
***seq.* (On Behalf of the New York Subclasses)**

100.    Mr. McNeil realleges and incorporates by reference all the foregoing allegations as if they were fully set forth herein.

101.    Capital One's practices of charging multiple NSF Fees on a single transaction or NSF Fees and OD Fees on a single transaction violate New York General Business Law § 349 ("NYGBL § 349").

102.    NYGBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

103.    As one of the largest banks in the United States with multiple branch locations in New York, Defendant conducted business, trade or commerce in New York State.

104.    In the conduct of its business, trade, and commerce, and in furnishing services in New York State, Defendant's actions were directed at consumers.

105.    In the conduct of its business, trade, and commerce, and in furnishing services in New York State, Defendant engaged in deceptive, unfair, and unlawful trade acts or practices, in violation of N.Y. Gen. Bus. Law § 349(a), including but not limited to the following:

a.    Defendant misrepresented material facts, pertaining to the sale and/or furnishing of banking services, to the New York Subclasses by representing and advertising that it would only assess a single $35 NSF Fee for a single transaction and would not subsequently charge a $35 OD Fee for that same transaction if it was paid; and

b.    Defendant omitted, suppressed, and concealed the material fact that it would charge multiple $35 NSF Fees for a single transaction, or that it would charge a $35 NSF Fee and $35 OD Fee for a single transaction.

106.    Defendant systematically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiff and members of the New York Subclasses.

107.    Defendant willfully engaged in such acts and practices and knew that it violated NYGBL § 349 or showed reckless disregard for whether such practices violated NYGBL § 349.

108.    As a direct and proximate result of Defendant's deceptive trade practices, members of the Subclasses suffered injury and/or damages, including the payment of multiple $35 NSF Fees on a single transaction, or a $35 NSF Fee and $35 OD Fee on a single transaction, and the loss of the benefit of their respective bargains with Capital One.

109.    The above unfair and deceptive practices and acts by Capital One were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

110.    Further, Capital One's conduct was substantially injurious to Mr. McNeil and members of the New York Subclasses in that they were forced to pay Account Fees they were told they would not incur.

111.    Capital One's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the New York Subclasses.

112.    Had Mr. McNeil known he could be charged more than one NSF fee on a single transaction, or that he could be charged a $35 NSF Fee and $35 OD Fee on a single transaction, he would have made different payment decisions so as to avoid incurring such fees.

113.    As a result of Capital One's violations of the NYGBL § 349, Mr. McNeil and members of the putative Subclasses have paid and will continue to pay deceptive NSF Fees and OD Fees. Accordingly, they have suffered and will continue to suffer actual damages.

114.    Accordingly, Plaintiff and New York Subclass Members are entitled to relief

under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble

damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

### THIRD CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of the Classes)**

115.    Mr. McNeil realleges and incorporates by reference all the foregoing allegations

as if they were fully set forth herein.

116.    Mr. McNeil, on behalf of himself and the Classes, asserts a common law claim for

unjust enrichment.

117.    By means of Capital One's wrongful conduct alleged herein, Capital One

knowingly provided banking services to Mr. McNeil and members of the Classes that were

unfair, unconscionable, and oppressive.

118.    Capital One knowingly received and retained wrongful benefits and funds from

Mr. McNeil and members of the Classes. In so doing, Capital One acted with conscious

disregard for the rights of Mr. McNeil and members of the Classes.

119.    As a result of Capital One's wrongful conduct as alleged herein, Capital One has

been unjustly enriched at the expense of, and to the detriment of, Mr. McNeil and members of

the Classes.

120.    Capital One's unjust enrichment is traceable to, and resulted directly and

proximately from, the conduct alleged herein.

121.    Under the common law doctrine of unjust enrichment, it is inequitable for Capital

One to retain the benefits it received, and is still receiving, without justification, from the

imposition of NSF Fees and/or OD fees on Mr. McNeil and members of the Classes in an unfair,

unconscionable, and oppressive manner. Capital One's retention of such funds constitutes unjust

enrichment.

122.     The financial benefits derived by Capital One rightfully belong to Mr. McNeil and members of the Classes. Capital One should be compelled to disgorge in a common fund for the benefit of Mr. McNeil and members of the Classes all wrongful or inequitable proceeds received by them. Further, a constructive trust should be imposed upon all wrongful or inequitable sums received by Capital One traceable to Mr. McNeil and the members of the Classes.

123.     Mr. McNeil and members of the Classes have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Mr. McNeil, individually and on behalf of the members of the Classes, respectfully requests the Court to enter an Order:

a.      certifying the proposed Classes;

b.      declaring Capital One's Account Fee policies and practices alleged in this Complaint to be wrongful, unfair and unconscionable;

c.      enjoining Capital One from charging more than one NSF Fee, or a NSF Fee and an OD Fee, for any single transaction;

d.      enjoining Capital One from materially misrepresenting its true fee processing practices;

e.      granting restitution of all Account Fees paid to Capital One by McNeil and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

f.      granting disgorgement of the ill-gotten gains derived by Capital One from its misconduct;

g.      awarding actual damages in an amount according to proof;

h.      statutory damages in the amount permitted by NYGBL § 349(h);

i.      awarding pre-judgment interest at the maximum rate permitted by applicable law;

j.      awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

k.      awarding costs and disbursements assessed by McNeil in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

l.      awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. McNeil and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated:  January 23, 2019                Respectfully submitted,

                                        /s/*Scott Martin*
                                        Scott Martin
                                        Steven M. Nathan
                                        HAUSFELD LLP
                                        33 Whitehall St., 14th Floor
                                        New York, NY 10004
                                        Telephone: (646) 357-1100
                                        Facsimile: (212) 202-4322
                                        smartin@hausfeld.com
                                        snathan@hausfeld.com

                                        James Pizzirusso (*pro hac vice* to be filed)
                                        HAUSFELD LLP
                                        1700 K St., NW, Ste 650
                                        Washington, DC 20006
                                        Telephone: 202-540-7200
                                        Facsimile: 202-540-7201
                                        jpizzirusso@hausfeld.com

Hassan A. Zavareei (*pro hac vice* to be filed)
Andrea Gold (*pro hac vice* to be filed)
TYCKO & ZAVAREEI LLP
1828 L St NW, Suite 1000
Washington, DC 20036
Telephone: 202-973-0900
Facsimile: 202-973-0950
hzavareei@tzlegal.com
agold@tzlegal.com

Jeffrey D. Kaliel (*pro hac vice* to be filed)
Sophia Gold (*pro hac vice* to be filed)
KALIEL PLLC
1875 Connecticut Ave., NW, 10th Floor
Washington, DC 20009
Telephone: 202-350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielpllc.com*

Jeff Ostrow (*pro hac vice* to be filed)
Jonathan M. Streisfeld (*pro hac vice* to be filed)
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: 954-525-4100
Facsimile: 954-525-4300
*ostrow@kolawyers.com*
*streisfeld@kolawyers.com*

*Attorneys for Plaintiff and the Putative Classes*