# HAUSFELD

STEVEN NATHAN
33 Whitehall Street
14th Floor
New York, NY 10004
(646) 357-1194 Direct
646-357-1100 Main
212-480-8560 Fax
snathan@hausfeld.com

April 22, 2019

The Honorable Frederic Block
United States District Court for the Eastern District of New York
Courtroom 10C S
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *McNeil v. Capital One Bank, N.A.*, No. 1:19-cv-00473 (E.D.N.Y.)

Dear Judge Block:

Plaintiff Bob McNeil provides this letter in response to the letter of Defendant Capital One, N.A. ("Capital One" or "Defendant") seeking a pre-motion conference in advance of its Motion to Dismiss. Plaintiff below addresses, and debunks, each of Capital One's purported bases for dismissal.

Plaintiff attempted a single $43 electronic payment to Paypal, but Capital One charged two insufficient funds fees ("NSF Fees"), for a total of $70, on that single item. The contract bars this double-fee practice, since it expressly promises "**a** fee" (singular) may be charged when an "item" is returned, *not* that multiple fees may be assessed *each time* an item is returned. Compl. at ¶ 43. A single item may receive a single fee, and that "item" does not transmogrify into a new "item" when it is reprocessed a few days later. Indeed, Capital One's own bank statements indicate as much, since Capital One reports this reprocessing as a "RETRY ITEM," *i.e.*, a re-try of the original item, not a "new" item returned. Capital One could have drafted a contract that provided it with the right to charge repeated NSF Fees on the same item, but it failed to do so and cannot do so now unilaterally, post-injury, without notice, and contrary to the express terms of its agreement.

**Argument:**

Each of Capital One's asserted bases for dismissal of Plaintiff's claims is without merit.

***First,*** Capital One contends that the "plain language" of the Deposit Agreement permits it to assess a fee "*each time* the bank provides services for returned or overdraft items." Capital One Pre-Motion Letter ("Letter") at 2 (emphasis added). But the contract does no such thing, and Capital One points to no provision in its Account Documents permitting it to assess a fee "**each time** . . . [it] provides services." (emphasis added). Rather, the Deposit Agreement states: "[W]e may charge **a** fee for each item returned in accordance with our current Schedule of Fees and Charges." Compl., Ex. A at 6 (emphasis added). The Agreement explicitly promises a single fee when an item is returned. Capital One's contract ties fee assessment to the "item" or instruction for payment exclusively, not to the number of times the item is reprocessed. The Schedule of Fees and Charges referenced in the Deposit Agreement provision further supports Plaintiff: "Non-sufficient Funds (NSF)/Overdraft (OD): $35." This code-like disclosure also promises a single fee will be assessed and never indicates more than one "NSF" can occur on the same item. In addition, the separate fee schedule titled "Explanation of Various Key Services and Charges," states a $35 fee will be assessed "[i]f we choose to decline a check or ACH transaction due to insufficient funds in your account. These transactions may be subject to

1

additional charges or penalties charged by the payee." The second sentence states that while a declined transaction may cause additional fees from the *payee*, it never says it can incur additional fees from *Capital One*—another clear indication that only a single NSF Fee can be assessed per item.

To the extent that the Court may find any ambiguity in the language of the Account Documents, such ambiguity should not be resolved in Capital One's favor and on a motion to dismiss. "[I]t is well settled that contractual ambiguities should be construed . . . against the drafter." *Seven Corners Shopping Ctr. Falls Church v. Chesapeake Enterprises USA LLC*, No. 07-CV-6332, 2009 WL 700868, at *8 (W.D.N.Y. Mar. 13, 2009) (citation and internal quotation marks omitted). Moreover, courts "will endeavor to give the construction most equitable to both parties instead of one which will give one of the parties an unfair or unreasonable advantage over the other." *Matter of Friedman*, 64 A.D.2d 70, 82, 407 N.Y.S.2d 999, 1006 (1978) (citation omitted). For this reason, any ambiguity should not be resolved to permit Capital One to impose multiple fees when it reprocesses the same item or transaction. In any event, any ambiguity should not be resolved at the pleading stage. *Peregrine Fixed Income Ltd. v. JP Morgan Chase Bank*, No. 05CIV.4351(RMB)(THK), 2006 WL 196967, at *2 (S.D.N.Y. Jan. 26, 2006) ("In deciding a Rule 12(b)(6) motion to dismiss a breach of contract claim, the Court's role is not to resolve ambiguities in the language of the contract." (citation omitted)).

**Second,** Capital One makes the specious argument that Plaintiff's breach of contract claim fails because he did not timely notify Capital One that he was assessed the NSF Fees. Capital One points to two notice provisions within its account agreement to support this argument, but neither provision requires that an accountholder "notify" Capital One of its own policy to assess improper fees. Those provisions only require notice of "any errors, discrepancies or irregularities, including but not limited to, unauthorized signature, alterations, improper charges, unauthorized transfer or withdrawal of funds, nonreceipt of an expected statement, or that any deposit was not properly credited to your account" or any "problem or error." Letter, Ex. 1 at ECF No. 3, 14. Neither provision references fees, let alone requires an accountholder to notify Capital One of its *own* fees prior to bringing a claim. It is logical that "fees" are not included because Capital One is already on notice of the fees it charges. These provisions are designed to protect Capital One from liability for events about which it would have no knowledge absent notice. Other courts have already rejected similar arguments. *See e.g., Smith v. Fifth Third Bank*, Case No. 1:18-cv-00464-TSB-SKB (S.D. Ohio) (April 18, 2019 Order (Dkt. 83) at 18-20); *see also Arlington Video Prods. Inc. v. Fifth Third Bancorp.*, 569 F. App'x 379, 390 (6th Cir. 2014) (holding that notice provision was not a contractual statute of limitations and failure to comply with it did not warrant summary judgment on breach of contract claim). This Court should do the same.

**Third,** Capital One incorrectly asserts that the National Bank Act ("NBA") preempts Plaintiff's claims. However, it is well-settled that the NBA does not preempt state consumer protection statutes of general application, such as GBL § 349, or contract or quasi-contractual law. States have always enforced their general laws against national banks as long as the state laws do not interfere with the banking business or with federal regulators' ability to enforce federal banking laws. *Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 532-33 (2009). *See also In re HSBC Bank, USA, N.A.*, 1 F. Supp. 3d 34, 46-48 (E.D.N.Y. 2014) (collecting cases and stating that "federal courts addressing this type of alleged misconduct have declined to hold that state claims, based on both statutory and common law, are preempted by the NBA or OCC regulations."); *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 552 (S.D.N.Y. 2014) (consumer protection statutes and torts have repeatedly been found by federal courts not to be preempted by the NBA); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2015 U.S. Dist. LEXIS 149629, at *86 (S.D.N.Y. Nov. 3, 2015) ("federal law, including the National Bank Act, is presumed not to preempt general tort law, which is the traditional domain of state authority").

**Fourth,** Capital One argues the unjust enrichment claim should be dismissed because of the written contract between the parties. This argument should be rejected because Plaintiff is permitted to pursue unjust enrichment in the alternative to breach of contract. *See e.g. Agerbrink v. Model Serv. LLC*, 155 F.

Supp. 3d 448, 459 (S.D.N.Y. 2016) (unjust enrichment claim was not barred despite a contract between the parties where plaintiff alleged that defendants illegally retained payments owed); *Singer v. Xipto Inc.*, 852 F. Supp. 2d 416, 426 (S.D.N.Y. 2012) ("While a party generally may not simultaneously recover upon a breach of contract and unjust enrichment claim arising from the same facts, it is still permissible to plead such claims as alternative theories.").

**Fifth**, Capital One is incorrect that the GBL § 349 claim and implied covenant claims "repackage" the breach of contract claim. This argument ignores that Plaintiff pleads, in great detail, Capital One's deceptive and unfair conduct via its misrepresentations and omissions. *See, e.g.* Compl. at ¶¶ 20-24; 38-62. Thus, the complaint states a GBL § 349 claim. *See e.g. In re Checking Account Overdraft Litig.*, 694 F.Supp.2d 1302, 1325 (S.D. Fla. 2010) (while applying New York law, "Plaintiffs are alleging that the actions of Defendant banks, in manipulating and reordering Plaintiffs' debit transactions, are deceptive and do not comply with the terms of the contract. Plaintiffs therefore sufficiently allege a "deceptive practice."); *Goldman v. Simon Property Group, Inc.*, 869 N.Y.S.2d 125, 129-30 (2d Dept. 2008) (allegation that fee was deceptive and not conspicuously disclosed sufficient to state a cause of action under GBL § 349); *Negrin v. Norwest Mortg.*, Inc., 700 N.Y.S.2d 184 (2d Dept. 1999) (allegations of a bank's unilateral imposition of fees upon its customers state a valid GBL § 349 claim). Capital One relies on *Costoso v. Bank of Am., N.A.*, 74 F. Supp. 3d 558, 575 (E.D.N.Y. 2015), but this authority is inapposite, because here, unlike in *Costoso*, Plaintiff does plead concealment and misrepresentation.

Likewise, in contrast to the express breach claim, Plaintiff's implied breach claim is based on (1) the discretion Capital One affords itself under the contract by the use of "may" and in unfairly defining the term "item"; (2) that Capital One acts in bad faith and abusing its discretion; and (3) reasonable consumers are justified in understanding they would only be charged a single NSF Fee or OD Fee per item. *See, e.g.* Compl. at ¶¶ 20-24; 69-78. *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011) (implied covenant claim stated where defendant's arbitrary post hoc valuation deprived plaintiff the fruits of the contract); *In re HSBC Bank*, 1 F. Supp. 3d at 54 (allowing claim to proceed despite HSBC's argument that it had contractual authority to post debit transactions from high to low); *Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 503 (S.D.N.Y. 2007) (implied covenant claim stated where defendant's actions increased its profits solely at its discretion and with no benefit to plaintiff, which was contrary to the expectations of a reasonable person); *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1113 (N.D. Cal. 2010), *aff'd in part, rev'd in part and remanded sub nom.* 704 F.3d 712 (9th Cir. 2012) (finding good faith and fair dealing claim where bank afforded itself discretion using the term "may").

Further, Capital One is incorrect that Plaintiff has not alleged causation as to the GBL § 349 claim, as causation is inferred from the allegations describing the misrepresentations and omissions. *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014).

Sincerely,

Steven M. Nathan

HAUSFELD

33 Whitehall Street  14th Floor
New York, NY 10004
646-357-1100 Main
212-202-4322 Fax

3