**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BOB MCNEIL, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>     - against -<br><br>CAPITAL ONE BANK, N.A.,<br><br>          Defendant. | Case No. 1:19-cv-00473-FB-RER |

## DEFENDANT CAPITAL ONE, N.A.'S MEMORANDUM OF LAW
## <ins>IN SUPPORT OF ITS MOTION TO DISMISS</ins>

ny-1718108

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................... 3

    A.    Capital One's Overdraft Services ........................................................ 4

    B.    ACH Transactions ............................................................................... 5

    C.    Error Notification Provisions ............................................................. 6

    D.    Plaintiff's Transactions ...................................................................... 7

LEGAL STANDARD .......................................................................................... 8

ARGUMENT ....................................................................................................... 9

I.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT .............. 9

    A.    The Complaint Does Not Allege a Breach Because the Contract
            Authorizes Capital One to Assess a Fee for Each Service Performed ................... 9

    B.    Plaintiff Fails to Allege Compliance with Contractual and Statutory Notice
            Requirements, a Condition Precedent to His Claim ............................................ 14

    C.    Plaintiff Cannot Assert a Breach of Covenant Claim that Merely Restates
            His Claim for Express Breach.............................................................................. 16

II.    THE NATIONAL BANK ACT PREEMPTS PLAINTIFF'S CLAIMS ........................ 18

III.    THE UNJUST ENRICHMENT CLAIM FAILS BECAUSE THE PARTIES'
        RELATIONSHIP IS GOVERNED BY A CONTRACT ............................................... 23

IV.    PLAINTIFF'S GBL CLAIM FAILS BECAUSE IT MERELY RESTATES HIS
        BREACH OF CONTRACT CLAIM ......................................................................... 24

CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*85th St. Rest. Corp. v. Sanders*,
194 A.D.3d 324 (1st Dep't 1993) ............................................................11

*Arrowgrass Master Fund Ltd. v. Bank of New York Mellon*,
106 A.D.3d 582 (1st Dep't 2013) ............................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................8

*Bank of Am. v. City & Cty. of San Francisco*,
309 F.3d 551 (9th Cir. 2002) ..................................................................18

*Barnett Bank of Marion Cty., N.A. v. Nelson*,
517 U.S. 25 (1996).............................................................................19, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................8

*Benex LC v. First Data Merch. Servs. Corp.*,
No. 14-CV-6393(JS)(AKT), 2016 WL 1069657 (E.D.N.Y. Mar. 16, 2016) .........................14

*Biro v. Conde Nast*,
807 F.3d 541 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2015 (2016)...........................8

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005)....................................................................17

*In re Cablevision Consumer Litig.*,
864 F. Supp. 2d 258 (E.D.N.Y. 2012) ...................................................25

*Costoso v. Bank of Am., N.A.*,
74 F. Supp. 3d 558 (E.D.N.Y. 2015) ..................................................5, 25

*Cox v. NAP Constr. Co.*,
10 N.Y.3d 592 (2008) .............................................................................24

*Dauphin v. Crownbrook ACC LLC*,
No. 12-CV-2100 ARR SMG, 2013 WL 1498363 (E.D.N.Y. Apr. 11, 2013) .........................11

*Douyon v. N.Y. Med. Health Care, P.C.*,
894 F. Supp. 2d 245 (E.D.N.Y. 2012) ...................................................25

**TABLE OF AUTHORITIES**
(continued)

Page

*Freund v. Weinstein*,
   No. 08-CV-1469 (FB)(MDG), 2009 WL 10706591 (E.D.N.Y. July 23, 2009)
   (Block, J.)...........................................................................................................................8

*Gaia House Mezz LLC v. State Street Bank & Trust Co.*,
   720 F.3d 84 (2d Cir. 2013)................................................................................................17

*Gale v. Int'l Bus. Machines Corp.*,
   9 A.D.3d 446 (2d Dep't 2004)...........................................................................................25

*Gutierrez v. Wells Fargo Bank, NA*,
   704 F.3d 712 (9th Cir. 2012) .................................................................................18, 21, 23

*Hawthorne v. Umpqua Bank*,
   No. 11-cv-06700-JST, 2013 WL 5781608 (N.D. Cal. Oct. 25, 2013)................................19

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*,
   1 F. Supp. 3d 34 (E.D.N.Y. 2014) ....................................................................................21

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.*,
   889 F.2d 1274 (2d Cir. 1989).............................................................................................10

*ICD Holdings S.A. v. Frankel*,
   976 F. Supp. 234 (S.D.N.Y. 1997)................................................................................16, 17

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
   62 F.3d 69 (2d Cir. 1995) .....................................................................................................3

*Johnson v. Nextel Commc'ns, Inc.*,
   660 F.3d 131 (2d Cir. 2011).................................................................................................9

*Koch v. Acker, Merrall & Condit Co.*,
   18 N.Y.3d 940 (2012) ........................................................................................................24

*Lambert v. Navy Federal Credit Union*,
   No. 19-cv-00103-LO-MSN, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019)............2, 13, 17, 22

*Levow-Guerra v. State Employees Credit Union*,
   No. 18-cv-15198 (N.C. Sup. Ct. Mar. 25, 2019) ..........................................................2, 13

*Lossia v. Flagstar Bancorp, Inc.*,
   895 F.3d 423 (6th Cir. 2018) ...............................................................................................5

*Lucker v. Bayside Cemetery*,
   114 A.D.3d 162 (1st Dep't 2013) .......................................................................................25

**TABLE OF AUTHORITIES**
(continued)

Page

*Mann v. TD Bank, N.A.*,
   No. 09-1062(RBK/AMD), 2009 WL 3818128 (D.N.J. Nov. 12, 2009)............................20, 22

*Mendez v. Bank of Am. Home Loans Servicing, LP*,
   840 F. Supp. 2d 639 (E.D.N.Y. 2012) ......................................................................................24

*Microstrategy, Inc. v. Bus. Objects, S.A.*,
   331 F. Supp. 2d 432 (E.D. Va. 2004), *aff'd*, 429 F.3d 1344 (Fed. Cir. 2005).......................10

*Oorah, Inc. v. Schick*,
   552 F. App'x 20 (2d. Cir. 2014) ................................................................................................23

*Pac. Capital Bank, N.A. v. Connecticut*,
   542 F.3d 341 (2d Cir. 2008)......................................................................................................19

*PFG Precious Metals, Inc. v. SunTrust Bank*,
   No. 10 C 7709, 2012 WL 401487 (N.D. Ill. Feb. 7, 2012)........................................................5

*Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester*,
   No. 11-CV-5608 CS, 2013 WL 135216 (S.D.N.Y. Jan. 10, 2013) ...........................................6

*Roberts v. Capital One, N.A.*,
   No. 16 CIV. 4841 (LGS), 2017 WL 1750445 (S.D.N.Y. May 4, 2017), *aff'd in
   relevant part*, 719 F. App'x 33 (2d. Cir. 2017).......................................................................23

*Rose v. Chase Bank USA, N.A.*,
   513 F.3d 1032 (9th Cir. 2008) .............................................................................................19, 21

*Ruttenberg v. Davidge Data Sys. Corp.*,
   215 A.D.2d 191 (1st Dep't 1995) ............................................................................................12

*In re Sept. 11 Litig.*,
   906 F. Supp. 2d 295 (S.D.N.Y. 2012), *aff'd, sub nom, World Trade Center
   Props. LLC v. QBE Int'l Ins. Ltd.*, 627 Fed. App'x. 10 (2d Cir. 2015) ..................................14

*Shaw Grp. Inc. v. Tripiefine Int'l Corp.*,
   322 F.3d 115 (2d Cir. 2003).....................................................................................................10

*Spread Enters., Inc. v. First Data Merch. Servs. Corp.*,
   No. 11-CV-4743(ADS)(ETB), 2012 WL 3679319 (E.D.N.Y. Aug. 22, 2012)................17, 23

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
   425 F.3d 119 (2d Cir. 2005)...................................................................................................3, 6

**TABLE OF AUTHORITIES**
(continued)

Page

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
150 F. Supp. 3d 593 (D. S.C. 2015).........................................................23

*U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*,
696 F. Supp. 2d 428 (S.D.N.Y. 2010).......................................................18

*Wachovia Bank, N.A. v. Burke*,
414 F.3d 305 (2d Cir. 2005)...................................................................19

*Watters v. Wachovia Bank, N.A.*,
550 U.S. 1, 127 S.Ct. 1559, 167 L.Ed.2d 389 (2007)...............................18

*Whittington v. Mobiloil Fed. Credit Union*,
No. 1:16-CV-482, 2017 WL 6988193 (E.D. Tex. Sept. 14, 2017).........21, 22

*Wilmington Shipping Co. v. New England Life Ins. Co.*,
496 F.3d 326 (4th Cir. 2007) .................................................................21

**Statutes & Rules**

12 C.F.R. § 7.4002.................................................................14, 18, 20

12 C.F.R. § 7.4007.........................................................................18, 20

12 C.F.R. § 205.17(a)...............................................................................4

12 C.F.R. § 1005.2(m)...........................................................................16

12 C.F.R. § 1005.11(b) ..........................................................................15

12 U.S.C. § 1 *et seq.*.............................................................................18

12 U.S.C. § 24........................................................................................18

12 U.S.C. § 93a......................................................................................18

15 U.S.C. § 1693f(a)...................................................................14, 15, 16

New York General Business Law § 349.................................................9, 24, 25

## **INTRODUCTION**

Under Plaintiff's contract with Capital One, N.A. ("Capital One" or "the Bank"), Plaintiff agreed to keep enough money in his account to cover all transactions presented for payment, and Capital One agreed, among other things, to take action to address any transactions that were presented against insufficient funds by either returning the item unpaid or covering Plaintiff's overdraft.  Capital One performed that service twice in each instance challenged by the Complaint—once when merchant PayPal submitted an item for payment that was returned unpaid for insufficient funds, and, again, when PayPal resubmitted it days later, and Plaintiff again lacked sufficient funds.  Plaintiff contends that he can have a merchant repeatedly submit a bad request for payment to Capital One, and that Capital One may charge him only a single fee when, in its discretion, it returns or elects to pay such items.  The crux of Plaintiff's complaint is that Capital One did not make him aware that it would process transactions that were submitted for payment a second time and that he would incur a fee each time.  But whether PayPal resubmitted transactions that are returned unpaid was up to Plaintiff and PayPal, not Capital One. All of Plaintiff's claims against Capital One fail because Plaintiff's Account Agreements[1] authorized Capital One to assess all of the challenged fees—*i.e.*, to charge a fee for each time it returns an item or pays an item into overdraft.

Two courts have recently rejected this same theory of liability in nearly-identical actions by the same Plaintiffs' counsel, involving nearly-identical contractual language.  Here, the plain language of the Account Agreements permits Capital One to assess a fee for each time the Bank provides services for returned or overdraft items.  As a Virginia federal court recently held in

---

[1] The Rules Governing Deposit Accounts ("Deposit Agreement"), the Schedule of Fees and Charges Essential Checking ("Schedule of Fees"), and the Electronic Funds Transfer Agreement ("EFT Agreement") are referred to herein collectively as the "Account Agreements."

-1-

*Lambert v. Navy Federal Credit Union*, there is no claim for breach of contract when fees are imposed for resubmitted requests for payment where there are insufficient funds in the customer's account and the account agreement states that a fee will be charged for "each" returned item. *See* No. 19-cv-00103-LO-MSN, 2019 WL 3843064, at *4 (E.D. Va. Aug. 14, 2019); *see also Levow-Guerra v. State Employees Credit Union*, No. 18-cv-15198 (N.C. Sup. Ct. April 15, 2019) (same).[2]  That is because, as the *Lambert* court concluded, each "re-presented" request for payment is a new item, and, therefore, eligible for a fee when it is returned or permitted to overdraw.  *Id.*

Like the contract in *Lambert*, the Account Agreements clearly state that fees for overdrafts and returned payments will be assessed for "each" "item" that is "returned" or for "each overdraft item."  If Plaintiff authorizes a transfer to be submitted twice, and Capital One performs the service of addressing each separate submission, it is contractually permitted to assess a fee each time it performs that service.  In addition, if Plaintiff did not, as he alleges, know that the merchant would present his transactions for payment twice (which is not plausible in light of his agreement with PayPal permitting just that), he was contractually obligated to comply with the express error notification provisions under the Account Agreements and the Electronic Funds Transfer Act ("EFTA").  He does not allege that he did so.  Plaintiff also cannot save his contract claim by alternatively pleading breach of an implied term that merely restates his claim for breach of an express term.  His breach of contract claim should be dismissed.

---

[2] The Order Granting Motion to Dismiss in *Levow-Guerra*, as well as the Brief of Defendant State Employees' Credit Union in Support of Motion to Dismiss Under Rule 12(b)(6)  ("*Levow-Guerra* MTD"), to provide context, is attached as Exhibit 1 to the Declaration of Jessica Kaufman ("Kaufman Decl.").

Further, the National Bank Act ("NBA") and its implementing regulations preempt all of Plaintiff's claims.  It is well established that the NBA preempts state-law challenges to the sufficiency of a national bank's disclosures.  The crux of the Complaint here is not that Capital One's disclosures are misleading, but that Capital One did not specifically inform Plaintiff that a merchant, like PayPal, might resubmit a transaction that could incur a fee for an overdraft or insufficient funds each time.  Such a claim falls squarely within the scope of NBA preemption, which bars attempts to dictate under state law what a national bank must disclose.

The Complaint also fails to allege the remaining claims.  Plaintiff cannot state a claim for unjust enrichment because the parties' relationship is governed by a contract Plaintiff concedes is enforceable.  And Plaintiff's GBL claim fails because it merely restate his breach of contract claim.

Accordingly, and as discussed further below, the Complaint fails to state a claim for relief and should be dismissed, with prejudice.

## STATEMENT OF FACTS

Plaintiff Bob McNeil alleges that he maintains a checking account with Capital One[3] governed by the Deposit Agreement.[4]  (Compl. ¶¶ 15, 38.)  Plaintiff claims that Capital One violates the Deposit Agreement when it "reprocesses"—without the customer's request—a

---

[3] Plaintiff erroneously named "Capital One Bank, N.A." as the defendant in this cation, but Capital One, N.A. is the proper defendant here.  As shown by the Deposit Agreement, Capital One, N.A., is the entity with which Plaintiff has contracted and at which he maintained his checking account.

[4] Plaintiff did not attach the Capital One Deposit Agreement in effect at the time he incurred the disputed fees, or the EFT Agreement in effect at the time he incurred the disputed January 2018 fee.  The version of the Deposit Agreement in effect in January and June 2018, and the version of the EFT Agreement in effect in January 2018, is attached hereto as Kaufman Decl. Exhibit 2.  The Court may consider this document because it is incorporated by reference and integral to Plaintiff's claims.  *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) ("In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint."); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (when complaint relies on "terms and effect" of documents, they are "integral" to the Complaint and can be considered on motion to dismiss.)

transaction that was previously returned for insufficient funds and charges an additional

non-sufficient funds fee ("NSF fee") if the transaction is again returned or charges an overdraft

fee ("OD fee") if the transaction is paid into overdraft.  (*Id.*  ¶¶ 7-8, 21-22.)  According to

Plaintiff, the Deposit Agreement, Schedule of Fees, and an additional bank document indicate

that only a single $35 NSF fee or single $35 OD fee will be charged per transaction or "item,"

which Plaintiff defines "as a customer request for payment or transfer."  (*Id.* ¶¶ 3-4, 6, 9, 20, 24,

40.)  Plaintiff's allegations are implausible given the mechanics of the Automated Clearing

House ("ACH") system and the terms of the Account Agreements.

### A.      Capital One's Overdraft Services

Capital One provides overdraft services to its customers, which cover ACH transactions,

checks, and recurring debit card transactions.[5]  (Kaufman Decl. Ex. 2 at 4.)  The Deposit

Agreement makes clear that NSF fees and OD fees may be assessed each time Capital One must

address a transaction that is returned or results in an overdraft.  The Deposit Agreement states, in

relevant part:

> **Returning Items for Insufficient Funds.**  You do not have the right to write a check
> or draft, to make an ATM or other withdrawal, or to initiate or have an automatic
> debit processed against your account for an amount that exceeds your available
> balance. . . At any time before final payment . . . we may return any check, draft,
> image, negotiable order of withdrawal, electronic debit or other item presented for
> payment against your account when there are insufficient available funds in your
> account to pay the item or if for some other reason the item is not good or payable.
> In addition, we may ***charge a fee for each item returned*** . . .
>
> **Overdrafts.**  We may in our sole discretion, and without obligation, elect to pay
> checks and other items drawn on your deposit account or to permit automatic bill
> payments and withdrawals against your account for an amount in excess of your
> available balance (an "Overdraft"). . .You understand and agree that if we elect to
> pay Overdraft items or to permit an Overdraft to exist in your account, you have no
> right to defer payment, and you must deposit additional funds into your account
> promptly in an amount sufficient to cover the Overdraft and to ***pay us Overdraft fees***

---

[5] An "overdraft" occurs when the account holder spends more money than he or she has deposited in the account
and the bank covers the difference.  *See* 12 C.F.R. § 205.17(a) (defining "overdraft service").

*for each Overdraft item* in accordance with our current Schedule of Fees and Charges. . .

(*See id*. at 4 (emphasis added).)

### B.     ACH Transactions

ACH transactions are payment requests that Capital One receives through the ACH Network.  ACH transactions are governed by The National Automated Clearing House Association Operating Rules and Guidelines ("NACHA Rules").  (Compl., Ex. C at 14); *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 426 (6th Cir. 2018); *PFG Precious Metals, Inc. v. SunTrust Bank*, No. 10 C 7709, 2012 WL 401487, at *1 (N.D. Ill. Feb. 7, 2012).

ACH transactions involve five parties:  "(1) the Originator (here, the individual merchant with whom [Plaintiff] did business); (2) the Originating Depository Financial Institution, or ODFI ([PayPal's] bank); (3) the ACH Operator (the Federal Reserve); (4) the Receiver ([Plaintiff]); and (5) the Receiving Depository Financial Institution, or RDFI ([Capital One])." *Lossia*, 895 F.3d at 426.  After the Receiver authorizes the merchant to initiate the ACH transaction, "the merchant's bank introduce[s] the transaction to the ACH Network by sending the transaction to the Federal Reserve (the ACH Operator), which in turn forward[s] the transactions to the Receiver's bank ([Capital One]) so that [Plaintiff's] account could be debited." *Id.* at 426-27.  When an Originator initiates a debit transaction, "the consumer's bank [Capital One] relies on a series of warranties received from the Originator through its bank that it has received proper authorization from the consumer before initiating a debit." *Costoso v. Bank of Am., N.A.*, 74 F. Supp. 3d 558, 570-71 (E.D.N.Y. 2015) (internal citation omitted).  When a financial institution acts as an RDFI, it "has no relationship with the [o]riginator of the ACH debit and has no basis or information on which to make an independent judgment as to whether

-5-

any specific ACH debit entry was properly authorized."[6]  Instead, the RDFI must rely on the representations made by the ODFI and has "no basis to know whether any specific ACH debit entry has been properly authorized."[7]  The RDFI must accept all entries submitted through the ACH network, subject to the RDFI's right of return.[8]  An RDFI may return an ACH entry if the consumer's account has insufficient funds to pay the debit.[9]  If this occurs, the NACHA rules permit the Originator to resubmit the transaction two additional times; the RDFI does not make the decision to reprocess the transaction.[10]  Here, Plaintiff had authorized PayPal to make an electronic transfer from his bank account, and "to try this transfer again if the initial transfer is rejected by [his] bank for any reason."[11]

### C.     Error Notification Provisions

Capital One's Account Agreements obligate the account holder to inspect his statement promptly after it is made available.  (*See* Kaufman Decl. Ex. 2 at 3, 14; Compl. Ex. A at 25-28.) The Deposit Agreement sets forth an error notification provision, requiring the account holder to provide written notice to the Bank "of any errors, discrepancies or irregularities" within thirty days, or fourteen days if the account was opened in New York, from the date the customer's

---

[6] *See ACH Operations Bulletin #1-2014: Questionable ACH Debit Origination: Roles and Responsibilities of ODFIs and RDFIs*, NACHA (September 30, 2014), *available at* https://www.nacha.org/news/ach-operations-bulletin-1-2014-questionable-ach-debit-origination-roles-and-responsibilities.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] The PayPal User Agreement effective July 27, 2017, is attached as Kaufman Decl. Exhibit 3, and the version effective June 15, 2018, is attached as Kaufman Decl. Exhibit 4.  *See* Kaufman Decl. Ex. 3 at 9 ("Bank account transfer"); Ex. 4 at 10 ("Bank account transfer"); *see also* PayPal User Agreement, at "Bank account transfer" (*available at* https://www.paypal.com/us/webapps/mpp/ua/useragreement-full#payment-methods).  PayPal's User Agreement may be considered under the doctrine of incorporation by reference because it is integral to his complaint:  Plaintiff specifically alleges that he did not request resubmission of his PayPal transaction.  (Compl. ¶¶ 28, 34); *Subaru Distribs. Corp.*, 425 F.3d at 122.  Moreover, the Court may take judicial notice of the terms and conditions in the User Agreement because they are publicly available on PayPal's website. *Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester*, No. 11-CV-5608 CS, 2013 WL 135216, at *4 (S.D.N.Y. Jan. 10, 2013) ("[I]t is well established that courts may take judicial notice of publicly available documents on a motion to dismiss.")

statement is postmarked or made available to him.   (*See* Kaufman Decl. Ex. 2 at 3.)  The

provision explains that "[t]hese time limits do not affect your rights under the Electronic Funds

Transfer Act" and refers the customer to the EFT Agreement "for time limits and error resolution

procedures for unauthorized or erroneous electronic funds transfers."  (*Id.*)

The EFT Agreement contains two error notification provisions pertaining to electronic

funds transfers.  The first—entitled "In Case of Errors or Questions About Your Electronic

Transfers"—asks the account holder to "Call us . . . or write us . . . as soon as you can if you

think your statement or receipt is wrong or if you need more information about a transfer listed

on the statement or receipt."  (*See* Kaufman Decl. Ex. 2 at 14; Compl. Ex. A at 25-26.)  This

must be done "no later than sixty (60) days after we sent you the FIRST statement on which the

problem or error appeared."  (*See* Kaufman Decl. Ex. 2 at 14; Compl. Ex. A at 25-26.)  The

second provision—entitled "Liability for Unauthorized Transfers on Consumer Accounts

Only"—explicitly applies to consumers and requires the account holder to notify the Bank of any

incorrect or unauthorized transfers or withdrawals within sixty days of the first statement mailed

to the customer where the suspected problem appeared.  (*See* Kaufman Decl. Ex. 2 at 15; Compl.

Ex. A at 27-28.)  As provided in the error notification provisions in the Account Agreements,

Capital One is not responsible for any losses not reported.  (*See, e.g.*, Kaufman Decl. Ex. 2 at 3.)

### D.      Plaintiff's Transactions

Plaintiff alleges that in January 2018 and again in June 2018 he initiated electronic ACH

payments through PayPal at a time when he had insufficient funds in his account to pay them.

(Compl. ¶¶ 25-37.)  First, on January 9, 2018, Plaintiff initiated an electronic ACH payment

through PayPal.  (*Id.* ¶ 26.)  At the time Plaintiff initiated this ACH payment, he had insufficient

funds in his account to make the payment.  (*Id.* ¶ 27.)  Due to the insufficient funds in Plaintiff's

account, Capital One returned the transaction as unpaid and assessed an NSF fee, as Plaintiff

admits Capital One was entitled to do.  (*Id.*)  Plaintiff alleges that Capital One allegedly processed the same transaction again on January 17, 2018, without his request and charged him another NSF fee after the item was again rejected due to insufficient funds.  (*Id.* ¶ 28.)

Second, on June 15, 2018, Plaintiff initiated a subsequent electronic ACH payment through PayPal.  (*Id.* ¶ 32.)  Plaintiff's account had insufficient funds to make the payment, and Capital One returned the transaction as unpaid and assessed an NSF fee on the transaction. (*Id.* ¶¶ 32-33.)  Plaintiff alleges that Capital One allegedly processed the same transaction on June 22, 2018, and this time exercised its discretion to pay the transaction into overdraft and assess an OD fee.  (*Id.* ¶ 34.)

## LEGAL STANDARD

A district court must dismiss a complaint under Rule 12(b)(6) for failure to state a claim where the plaintiff fails to set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In considering a Rule 12(b)(6) motion, the Court must accept all factual allegations pleaded in the complaint as true, *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2015 (2016), but it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Freund v. Weinstein*, No. 08-CV-1469 (FB)(MDG), 2009 WL 10706591, at *2 (E.D.N.Y. July 23, 2009) (Block, J.) (quoting *Twombly*, 550 U.S. at 555)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

## ARGUMENT

Plaintiff asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of New York General Business Law § 349.  (Compl. ¶¶ 91-123.)  None of his claims entitle him to relief.

## I.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.

### A.    The Complaint Does Not Allege a Breach Because the Contract Authorizes Capital One to Assess a Fee for Each Service Performed.

To state a claim for breach of contract under New York law, "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011).[12]  Here, Plaintiff's contract claim fails because he has not offered any plausible allegation that Capital One breached its obligations under the Account Agreements.

Plaintiff does not contest Capital One's right to charge NSF and OD fees under the Account Agreements.  (*See* Compl. ¶ 6.)  Rather, he takes issue with the imposition of a fee for each instance of service provided with respect to insufficient funds and overdraft items presented to the bank for payment.  Plaintiff does not point to a provision in the Account Agreements that states that Capital One will charge only one such fee for transfers or other items that are submitted and addressed by Capital One twice.  Nor can he, because the plain language of the Deposit Agreement permits Capital One to assess a fee "each" time the bank provides services for returned or overdraft items.  "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Hunt Ltd.*

---

[12] Pursuant to the terms of the Deposit Agreement, and consistent with Plaintiff's allegations, New York law is controlling and applies to Plaintiff's claims.  *See* Kaufman Decl. Ex. 2 at 10 (providing that "applicable state law" is "the state where [the customer's] account was established"); (Compl. ¶ 15 (alleging that Plaintiff "is a citizen of New York, residing at all relevant times in Brooklyn, New York," that he "maintains a checking account at Capital One," and "patronized Capital One banking centers located in Brooklyn, New York and other locations in the New York City area").

*v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989).  The Court should not "alter the plain terms of an agreement or . . . strain language beyond its reasonable and ordinary meaning."  *Shaw Grp. Inc. v. Tripiefine Int'l Corp.*, 322 F.3d 115, 124 (2d Cir. 2003).

The Deposit Agreement contains separate sections describing the circumstances when NSF and OD fees will be assessed.  In the "Returning Items for Insufficient Funds" ("Returned Items") section, Capital One explains that "[a]t any time before final payment" it "may return any check, draft, image, negotiable order of withdrawal, electronic debit or other *item presented for payment* . . . when there are insufficient available funds in [the customer's] account to pay the item . . . ."  (Kaufman Decl. Ex. 2 at 4 (emphasis added).)  The same paragraph then states that Capital One "may charge a fee for *each* item returned in accordance with [its fee schedule]."  (*Id.*) (emphasis added).  Further, in the "Overdrafts" section, Capital One explains that it may "elect to pay checks and other *items drawn on your deposit account* or to permit automatic bill payments and withdrawals against your account for an amount in excess of your available balance (an "Overdraft")."  (*Id.*) (emphasis added).  The same section then provides that if Capital One "elect[s] to pay Overdraft items," a customer must "pay [it] Overdraft fees for *each* Overdraft item in accordance with [its] current Schedule of Fees and Charges."  (*Id.*) (emphasis added).

These provisions set forth the circumstances under which NSF and OD fees will be assessed: for "each" "item" that is "returned" or for "each" "Overdraft item."  The plain meaning of these phrases, combined with principles of contractual interpretation, demonstrate that Capital One may charge, as appropriate, an NSF fee or OD fee every time there is a debit request for payment for which a customer does not have sufficient funds to pay.

First, "the ordinary meaning of the word 'each' is 'every one of two or more considered

-10-

individually or one by one.'"  *Microstrategy, Inc. v. Bus. Objects, S.A.*, 331 F. Supp. 2d 432, 440

(E.D. Va. 2004), *aff'd*, 429 F.3d 1344 (Fed. Cir. 2005) (citation omitted).  Second, "[u]nder the

principle of *noscitur a sociis*, the meaning of unclear words in a contract may be gleaned by

reference to other words associated with them."  *Dauphin v. Crownbrook ACC LLC*, No. 12-CV-

2100 ARR SMG, 2013 WL 1498363, at *5 (E.D.N.Y. Apr. 11, 2013) (internal quotation marks

and citation omitted).  Applying that principle, the meaning of the word "item" in the two

sentences allowing fees is drawn from its use in the prior sentences in the Returned Items and

Overdraft sections and means any item "*presented* for payment" or "*drawn*" on a customer's

account.  This interpretation comports with the UCC definition, which states that an "item" is

"an instrument or a promise or order to pay money handled by a bank for collection or payment."

UCC Article 4. § 4-104(a)(9).

Plaintiff objects to this interpretation by claiming that "item" means "a customer request

for payment or transfer" and that he only made a single request for payment for his ACH

transactions.  (Compl. ¶¶ 40, 50.)  But Plaintiff does not identify any language in the Deposit

Agreement defining "item" in this way.  *85th St. Rest. Corp. v. Sanders*, 194 A.D.3d 324, 326

(1st Dep't 1993) (a court cannot "rewrite the terms of an agreement under the guise of

interpretation").  Nor does this definition make sense in the context of how the ACH system

works.  As a receiving institution, or RDFI, under NACHA rules, Capital One does not initiate

transactions; it simply receives a request for payment.  The actions it must take (debit the

account, return for insufficient funds, or pay into overdraft) do not vary if it is responding to the

originating institution's initial request or a resubmitted request.  In any event, here, the allegation

that Plaintiff only made a "single" request for payment is not plausible in light of his agreement

with PayPal, which authorized PayPal to make an electronic transfer from his bank account and

-11-

"to try this transfer again if the initial transfer is rejected by [his] bank for any reason."[13]

Plaintiff further claims that the Returned Items provision means that "'a' single fee may be charged" for each "item" that results from an accountholder "initiating" a payment.  (Compl. ¶ 44.)  But Plaintiff's interpretation requires adding a word that is not there ("single") and ignores how the term "item" is used in the Returned Items and Overdraft sections, as his addition of "single" would still permit Capital One to charge a fee for each instance of a returned item or item paid into overdraft.  *See Arrowgrass Master Fund Ltd. v. Bank of New York Mellon*, 106 A.D.3d 582, 583 (1st Dep't 2013) ("Single clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part.") (internal quotation marks and citation omitted); *Ruttenberg v. Davidge Data Sys. Corp.*, 215 A.D.2d 191, 196 (1st Dep't 1995) ("An interpretation that gives effect to all the terms of an agreement is preferable to one that ignores terms or accords them an unreasonable interpretation.").

None of the other portions of the Account Agreements support a plausible allegation of breach, either.  Complaint Exhibit B, the "Schedule of Fees and Charges," is incorporated into the Deposit Agreement.  Plaintiff does not claim that Capital One breached this provision, but contends that it is misleading because it states that a $35 fee will only be charged when transactions "create an overdraft" in a customer's account and does not authorize NSF fees. Plaintiff badly misreads the schedule, which is plainly intended to disclose the amount of fees, not explain every instance in which a fee will be assessed.  The language Plaintiff identifies is in a footnote explaining the OD fee.  It simply does not discuss the NSF fee. [14]

---

[13] *See* Kaufman Decl. Ex. 3 at 9; Ex. 4 at 10.
[14] Plaintiff does not allege that Compl. Ex. D, Capital One's "Explanation of Various Key Services and Charges," is a part of its agreement with Capital One.  Even if it were, it is consistent with Capital One's interpretation of the Deposit Agreement.  It states that Capital One may assess an NSF fee if it "choose[s] to decline a check or ACH

The court in *Lambert* applied a similar analysis in dismissing a nearly identical contract

claim.  There, the contract specified that the credit union "may return debits to the checking

account . . . if the amount of the debit exceeds funds available in the checking account" and

assess "[a] fee for each returned debit item."  *Lambert*, 2019 WL 3843064, at 4-5.  The *Lambert*

Court noted that the credit union "did not keep [the merchant's] unsuccessful first ACH request

and attempt to reprocess the request on its own," but rather returned the request "and waited for

[the merchant] to submit another request for payment, which [the credit union] was then

obligated to process," and found that fees for each presentment were authorized by the contract.

*Id.* at 4.  *Lambert* comports with the decision in *Levow-Guerra v. State Employees Credit Union*,

a North Carolina case proceeding on the same theory asserted in *Lambert* and the instant action,

again by the same plaintiffs' counsel.  *See* Order Granting Motion to Dismiss, No. 18-cv-15198

(N.C. Sup. Ct. April 15, 2019). [15]  There, the Court also dismissed a contract claim where the

contract permitted a fee for each item "presented for payment."  *Id.*

Here, the Complaint does not describe a breach of Plaintiff's contract with Capital One,

as the terms of the contract are clear and Capital One's practices are consistent with those terms.

Rather, the Complaint describes a demand that Capital One provide a banking service—*i.e.*,

processing his transactions each subsequent time a merchant submits them for payment and

either returning the transaction or covering Plaintiff's overdraft—for free.  But as the Office of

---

transaction due to insufficient funds in your account."  (Compl. Ex. D at 3.)  Plaintiff contends that a transaction is a
"request for payment by an accountholder," (Compl. ¶ 46), but provides no support in the Deposit Agreement or
elsewhere for this limitation.  A plain reading of the actual language is that Capital One may assess an NSF fee
whenever it declines an ACH transaction due to insufficient funds, regardless of whether it was an initial
presentment or a re-presentment.

To the extent Plaintiff attempts to allege a breach of contract based on the Online Banking Agreement, (Compl. Ex.
C), that contract is inapplicable to the transactions Plaintiff challenges in the Complaint.

[15] *See* Kaufman Decl. Ex. 1, at Order Granting Mot. to Dismiss; *see also*, *id*. at Br. of Def. State Employees'
Union in Supp. of Mot. To Dismiss Under Rule 12 (b)(6), *Levow-Guerra*,  No. 18-cv-15198, at 7-12 (N.C. Sup. Ct.
Mar. 25, 2019).

-13-

the Comptroller of the Currency ("OCC") has stated, and as discussed further in Section II, below, "a bank's authority to provide products or services to its customers necessarily encompasses the ability to charge a fee for the product or service.  This ability to charge a fee for the bank's services is expressly reaffirmed in 12 C.F.R. § 7.4002(a), which provides: '(a) *Authority to impose charges and fees*. A national bank may charge its customers non-interest charges and fees, including deposit account service charges.'"  OCC Inter. Ltr. 1082 (May 17, 2007); *see also In re Sept. 11 Litig.*, 906 F. Supp. 2d 295, 304 (S.D.N.Y. 2012), *aff'd, sub nom, World Trade Center Props. LLC v. QBE Int'l Ins. Ltd.*, 627 Fed. App'x. 10 (2d Cir. 2015) ("Proper interpretation also requires consideration of the broader context, namely the business purposes sought to be achieved by the parties.") (internal quotation marks and citation omitted). The breach of contract claim should be dismissed for failure to allege the element of breach.

**B.      Plaintiff Fails to Allege Compliance with Contractual and Statutory Notice Requirements, a Condition Precedent to His Claim.**

The Complaint also fails to state a claim for breach of contract because it does not allege that Plaintiff complied with contractual and EFTA error notification provisions.  (*See* Kaufman Decl. Ex. 2 at 3; *see id.* at 14; 15 U.S.C. § 1693f(a); *id.* § 1693g(a).)  Because Plaintiff does not allege that he notified Capital One of the allegedly unauthorized resubmitted PayPal transactions and the associated fees, he fails to sufficiently plead his own performance or damages, both of which are required to state a claim.  *See, e.g., Benex LC v. First Data Merch. Servs. Corp.*, No. 14-CV-6393(JS)(AKT), 2016 WL 1069657, at *4 (E.D.N.Y. Mar. 16, 2016) (dismissing implied covenant claim due to plaintiff's failure to comply with contractual error notification

-14-

requirement).  Under New York law, a plaintiff's failure to comply with a condition precedent will bar the plaintiff's claim for breach of contract.  *Id*.

The Deposit Agreement obligates the account holder to inspect his statement promptly after it is made available.  First, the "Statements" provision requires a customer to notify the Bank of "any errors, discrepancies or irregularities" within thirty days from the date the statement is postmarked or made available to the customer, or within fourteen days if the account was opened in New York.  (Kaufman Decl. Ex. 2 at 3.)  This provision also notes:  "[t]hese time limits do not affect your rights under the Electronic Funds Transfer Act.  Please refer to our EFT Disclosure for time limits and error resolution procedures for unauthorized or erroneous electronic funds transfers."  (*Id*.)  Second, the EFT Agreement has two notice provisions. Paragraph 9, entitled "In Case of Errors or Questions About Your Electronic Transfers," asks the account holder to contact the Bank if the customer suspects his statement is wrong within sixty (60) days of when the Bank sent the first statement on which the problem or error appeared. (Kaufman Decl. Ex. 2 at 14; Compl. Ex. A at 25.)  Similarly, paragraph 14, entitled "Liability for Unauthorized Transfers on Consumer Accounts Only," asks the account holder to notify the Bank of any incorrect or unauthorized transfers or withdrawals within sixty (60) days of the first statement mailed to the customer where the suspected problem appeared.  (Kaufman Decl. Ex. 2 at 15; Compl. Ex. A at 27.)

The federal EFTA also contains an error resolution process that applies to Plaintiff's challenged "retry" transactions.  The EFTA requires consumers to report "unauthorized electronic fund transfers" to financial institutions within sixty (60) days after receiving the written documentation containing the error. 15 U.S.C. § 1693f(a); *see* 12 C.F.R. § 1005.11(b).  A financial institution is not liable "for losses the financial institution establishes would not have

occurred but for the failure of the consumer to report within sixty days of transmittal of the statement . . . any unauthorized electronic fund transfer or account error which appears on the periodic statement."  15 U.S.C. § 1693g(a).[16]

Plaintiff appears to allege, despite his agreement with PayPal, that he did not authorize PayPal to make subsequent attempts to submit his transactions after they were returned unpaid. The Complaint states that Capital One's second processing of his transactions were "[u]nbeknownst to [Plaintiff]" and "without his request to Capital One to retry the transaction[s]."  (*See* Compl. ¶¶ 28, 34).[17]  Taking Plaintiff's own allegations at face value, he contends that these "unbeknownst" re-presentments were unauthorized.  Plaintiff cannot now bring a claim for breach of contract after he failed to review his statements and provide the timely notice required under his Account Agreements and the EFTA.  His contract claim is thus barred and should be dismissed for this additional, independent reason.

### C.    Plaintiff Cannot Assert a Breach of Covenant Claim that Merely Restates His Claim for Express Breach.

Plaintiff's implied covenant claim merely echoes his breach of contract claim, and fares no better.  "A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of

---

[16] The EFTA defines an "error" to include an unauthorized electronic fund transfer, defined to mean "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit, but the term does not include any electronic fund transfer (A) initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer, unless the consumer has notified the financial institution involved that transfers by such other person are no longer authorized, (B) initiated with fraudulent intent by the consumer or any person acting in concert with the consumer, or (C) which constitutes an error committed by a financial institution."  15 U.S.C. §§ 1693f(f); 1693a(12).  Regulation E, which specifically applies to overdrafts, has a substantially similar definition.  12 C.F.R. § 1005.2(m).
[17] The Complaint also states that Plaintiff "understood [the] PayPal transaction to be a single transaction . . . ."  (*Id.* ¶ 36.)  Whether or not Plaintiff attempted to pay for a single *purchase* through PayPal, Plaintiff's agreement with PayPal is clear that Plaintiff authorized PayPal to present a request to his bank for payment multiple times.  (*See* PayPal User Agreement, *supra* note 11, at "Bank account transfer") (authorizing PayPal "to try this transfer again if the initial transfer is rejected by [his] bank for any reason").

an express provision of the underlying contract." *ICD Holdings S.A. v. Frankel*, 976 F. Supp.

234, 243-44 (S.D.N.Y. 1997).  Tellingly, Plaintiff brings his implied covenant claim and breach

of contract claim under one cause of action based on the exact same conduct—the imposition of

a fee for each instance of service provided with respect to insufficient funds and overdraft items

presented to the Bank for payment.  (Compl.  ¶¶ 91-99.)  Thus, it is clear that his implied

covenant claim is duplicative of his breach of contract claim and should be dismissed as such.

*See, e.g.*, *ICD Holdings S.A.*, 976 F. Supp. at 243-44; *Spread Enters., Inc. v. First Data Merch.*

*Servs. Corp.*, No. 11-CV-4743(ADS)(ETB), 2012 WL 3679319, at *4 (E.D.N.Y. Aug. 22, 2012)

(rejecting plaintiff's argument that allegations concerning defendant's exercise of discretion to

unilaterally charge fees under contract stated separate implied covenant claim).

To the extent Plaintiff alleges that Capital One abused its contractual discretion by

initially returning a transaction for insufficient funds and then approving the item into overdraft

when resubmitted, these allegations again challenge the same conduct underlying his contract

claim and should be dismissed for the same reason.[18]  (Compl. ¶¶ 70, 72-76, 95.)  But, even

more, Plaintiff concedes that Capital One has the right under the Account Agreements to either

return an item unpaid or pay it into overdraft.  (Compl. ¶ 65.)  Plaintiff cannot use the implied

covenant to force Capital One to do one or the other.  *See Gaia House Mezz LLC v. State Street*

*Bank & Trust Co.*, 720 F.3d 84, 93 (2d Cir. 2013) ("The covenant cannot be used . . . to imply an

obligation inconsistent with other terms of a contractual relationship."); *Broder v. Cablevision*

*Sys. Corp.*, 418 F.3d 187, 198–99 (2d Cir. 2005) ("[t]he implied covenant can only impose an

obligation consistent with other mutually agreed upon terms in the contract" and cannot "add []

---

[18] Additionally, as the court recognized in *Lambert*, there is no breach of the implied covenant where a financial institution's right to assess the challenged fee has accrued (*i.e.*, a debit item has been returned for nonsufficient funds, or relatedly is an overdraft item) and the financial institution has not exercised its contractual discretion in bad faith to cause that right to accrue.  *Lambert*, 2019 WL 3843064, at *5.

to the contract a substantive provision not included by the parties") (internal quotation marks and citation omitted).  Moreover, the "implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." *U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 696 F. Supp. 2d 428, 445 (S.D.N.Y. 2010) (internal quotation marks and citation omitted).

For all of the foregoing reasons, Plaintiff's contract claim should be dismissed.

## II.     THE NATIONAL BANK ACT PREEMPTS PLAINTIFF'S CLAIMS.

Plaintiff's Complaint must be dismissed for an independent reason—federal law preempts each of his claims.  Specifically, the NBA, 12 U.S.C. § 1 *et seq.* and federal regulations promulgated by the OCC, 12 C.F.R. 7.4002, 7.4007, preempt any state law or cause of action that "prevent[s] or significantly interfere[s] with the national bank's exercise of its powers." *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 722 (9th Cir. 2012) (quoting *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996)).  Here, through his state law claims, which attempt to dictate the content of Capital One's disclosures, that is exactly what Plaintiff seeks to do.

Capital One is, and is specifically alleged to be, a national bank.  (Compl. ¶ 16.)  It is well settled that "[b]usiness activities of national banks are controlled by the [NBA]," and "regulations promulgated thereunder by the [OCC]," "the agency charged by Congress with supervision of the NBA."  *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 6, 127 S.Ct. 1559, 167 L.Ed.2d 389 (2007); 12 U.S.C. § 93a; *see also Bank of Am. v. City & Cty. of San Francisco*, 309 F.3d 551, 561 (9th Cir. 2002) ("The supremacy of the federal government in regulating national banks has long been recognized.").  Through the NBA, Congress has authorized national banks to exercise not only enumerated powers under the Act, but "all such incidental powers as shall be necessary to carry on the business of banking."  12 U.S.C. § 24. The Supreme Court has

-18-

consistently recognized that this is a "grant[] of authority not normally limited by, but rather ordinarily pre-empting, contrary state law." *Barnett Bank, N.A. v. Nelson* , 517 U.S. 25, 32 (1996); *see also Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1037 (9th Cir. 2008) ("Where . . . Congress has explicitly granted a power to a national bank without any indication that Congress intended for that power to be subject to local restriction, Congress is presumed to have intended to preempt state laws."). Thus, in the context of regulating national banks, any presumption against federal preemption is inapplicable. *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 314 (2d Cir. 2005) ("The presumption against federal preemption disappears, however, in fields of regulation that have been substantially occupied by federal authority for an extended period of time. Regulation of federally chartered banks is one such area." (quoting *Flagg v. Yonkers Sav. & Loan Ass'n,* 396 F.3d 178, 183 (2d Cir. 2005))).

Such federal preemption of a state law or claim can be either express or implied, covering situations where Congress has expressly preempted state law, where Congress's legislation occupies an entire field, or where federal law conflicts with state law. *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir. 2008). In other words, federal preemption reaches not only state laws and claims that directly police federally-regulated conduct, but those that are facially neutral, including contract and tort claims, if the challenged conduct falls within the scope of the federal regulation. *Rose*, 513 F.3d at 1038 ("Regardless of the nature of the state law claim alleged . . . the proper inquiry is whether the legal *duty* that is the predicate of Plaintiffs' state law claim falls within the preemptive power of the [National Bank Act ("NBA")] or regulations promulgated thereunder.") (emphasis added); *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2013 WL 5781608, at *12 (N.D. Cal. Oct. 25, 2013) (dismissing good faith

-19-

and fair dealing claim challenging bank's ordering of transactions because claim would "interfere[] with a national bank's federally authorized power to choose a posting order"); *Mann v. TD Bank, N.A.*, No. 09-1062(RBK/AMD), 2009 WL 3818128, at *4 (D.N.J. Nov. 12, 2009) (finding contract, implied covenant, unconscionability, and consumer protection claims premised on bank's gift card fees preempted).

Here, the OCC, in implementing the NBA, has enacted regulations that expressly and impliedly preempt Plaintiff's claims. Under 12 C.F.R. § 7.4007, "[a] national bank may receive deposits and engage in any activity incidental to receiving deposits." 12 C.F.R. § 7.4007(a). This regulation provides that: "[a] national bank may exercise its deposit-taking powers *without regard to state law limitations* concerning . . . (2) [c]hecking accounts; [and] (3) [d]isclosure requirements." 12 C.F.R. § 7.4007(b) (emphasis added). And while state laws on the subject of contracts and torts "are not inconsistent with the deposit-taking powers of national banks and apply to national banks," that is only the case if the state law is "consistent with the decision of the Supreme Court in [*Barnett*], 517 U.S. 25 (1996)"—*i.e.*, the state law does not "prevent or significantly interfere with the national bank's exercise of its power." 12 C.F.R. § 7.4007(b); *Barnett*, 517 U.S. at 33. In addition to deposit-taking powers, OCC regulations also authorize national banks to "charge [their] customers non-interest charges and fees, including deposit account service charges." *See* 12 C.F.R. § 7.4002(a). The establishment of such "non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles." 12 C.F.R. § 7.4002(b)(2).

Despite these regulations, Plaintiff has asserted state law claims directly aimed at Capital One's disclosures, and which significantly interfere with the Bank's exercise of its federally-

-20-

prescribed powers.  Indeed, the crux of the Complaint is that Capital One did not specifically

disclose that a merchant, like PayPal, might resubmit a transaction that could incur an NSF or

OD fee.  *See* Compl. ¶ 24 ("***Capital One's Account Documents never disclose*** that the Bank

undertakes these practices.") (emphasis added); *id*. ¶ 57 ("The ***disclosures*** described above ***never***

***discuss*** a circumstance where Capital One may assess multiple NSF Fees for a single check or

ACH transaction that was returned for insufficient funds and later reprocessed one or more times

and returned again.") (emphasis added); *id*. ¶ 61 ("***Nowhere does Capital One disclose*** that it

will treat each reprocessing of a check or ACH payment as a separate item, subject to additional

fees, nor do Capital One customers ever agree to such fees.") (emphasis added).

In situations such as this, courts have routinely found that state law challenges to

disclosures, including claims recast as contract and tort claims, are preempted by the NBA and

OCC's regulations.  *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp.

3d 34, 48 (E.D.N.Y. 2014) (finding that "inasmuch as the Plaintiffs seek to impose liability on

HSBC for the bank's failure to sufficiently disclose its posting method, that argument is

preempted"); *Gutierrez*, 704 F.3d at 726 (finding a bank's "failure to sufficiently disclose its

posting method leads to the same result as mandating specific disclosures," both of which are

"tantamount to state regulation of disclosure requirements"); *Rose*, 513 F.3d at 1037-38 (finding

plaintiff's California UCL claims of failure to make disclosures relating to "convenience checks"

were preempted by the NBA); *Whittington v. Mobiloil Fed. Credit Union,* No. 1:16-CV-482,

2017 WL 6988193, at *7-11 (E.D. Tex. Sept. 14, 2017) (finding consumer protection act claim,

unjust enrichment claim, and fraud claim preempted to the extent they were premised on failure

to make disclosures, or on the types of fees charged and how they charged them).[19]  Indeed, the

---

[19]*See also Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 341 (4th Cir. 2007) (reasoning that parties may not avoid the preemptive reach of federal law by recasting otherwise preempted claims as state law

reasoning applied in *Lambert*, which addressed similar claims targeting similar transactions by a federal credit union governed by similar regulations, is directly on point.  In *Lambert*, the court found that claims regarding a "failure to disclose certain fee practices or any perceived unfairness in the fee practices themselves are preempted."  *Lambert*, 2019 WL 3843064, at *2. Specifically, the *Lambert* court found that where a plaintiff alleges a bank "d[id] not assess fees as disclosed in its contract and that its actual fee assessment practice is unfair," such as Plaintiff does here, the claims are preempted.  *Id*. at 5. The Court should reach the same conclusion here.

To the extent Plaintiff attempts to circumvent federal preemption by arguing that his claims are based on misleading statements in Capital One's disclosures, this argument fails.  As discussed above, Capital One did exactly what it said it would do in the Account Agreements— assess an NSF or OD fee for "each item" that it "returned" or for "each Overdraft item."  (*See, e.g.*, Kaufman Decl. Ex. 2 at 4.)  Plaintiff's allegations do nothing to undermine that.  Indeed, the Complaint gives rise to no inference that Capital One did anything different than what it disclosed and based on what Plaintiff authorized PayPal to do (*i.e.*, submit retry transactions). *See infra* Section I.A.  And, to the extent Plaintiff's implied covenant or unjust enrichment claims also challenge Capital One's decision to return the transactions he authorized unpaid or pay them into overdraft, the OCC has made clear that these are business decisions Capital One may make in its discretion, and they are not subject to state law challenges.  Specifically, the OCC has stated that:

> The process by which a bank honors overdraft items is typically part of the Bank's administration of a depositor's account. Creating and recovering overdrafts have long been recognized as elements of the discretionary deposit account services that banks provide. Where a customer creates debits on his or her account for amounts in excess of the funds available in that account, a bank may elect to honor the

---

contract and tort claims); *Mann*, 2009 WL 3818128, at *4 (finding breach of contract, implied covenant of good faith, unconscionability, and state statutory unfair trade practices claims premised on bank's gift card fees preempted).

overdraft and then recover the overdraft amount as part of its posting of items and clearing of the depositor's account.

*See* OCC Interpretive Letter # 1082 (May 17, 2007).  Accordingly, these claims too are subject to dismissal.  *Gutierrez*, 704 F.3d at 725 ("The district court is not free to disregard the OCC's determinations of what constitutes a legitimate pricing decision, nor can it apply state law in a way that interferes with this enumerated and incidental power of national banks.").

Plaintiff's attempt to regulate Capital One's disclosures and its power to honor overdrafts do not amount to incidental interference; this interference is significant and should be preempted. *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 150 F. Supp. 3d 593, 610 (D. S.C. 2015) (finding "the degree of impact on TD Bank's deposit-taking powers imposed by" claims of unconscionability, conversion, unjust enrichment, and violation of state consumer protection statutes "regarding posting order and honoring transactions into overdraft cannot be described as incidental," and therefore were preempted).

## III.    THE UNJUST ENRICHMENT CLAIM FAILS BECAUSE THE PARTIES' RELATIONSHIP IS GOVERNED BY A CONTRACT.

Plaintiff's claim for unjust enrichment fails because the relationship between Plaintiff and Capital One is governed by a contract.  Under New York law, "[u]njust enrichment is a quasi-contractual claim; it exists only in the absence of a valid contract" that governs the subject matter of the dispute.  *Oorah, Inc. v. Schick*, 552 F. App'x 20, 23 (2d. Cir. 2014) (citing *Goldman v. Metro. Life Ins. Co.,* 5 N.Y.3d 561, 572 (2005)); *see Spread Enters., Inc.*, 2012 WL 3679319, at *5-6 (dismissing unjust enrichment claim where the parties disputed the interpretation of the governing contract, but not its validity).  Here, Plaintiff concedes that the Deposit Agreement with Capital One is enforceable, and that it forms the basis of his breach of contract claim.  (Compl.  ¶¶ 38, 93.)  Plaintiff's unjust enrichment claim fails as a matter of law. *See, e.g., Roberts v. Capital One, N.A.*, No. 16 CIV. 4841 (LGS), 2017 WL 1750445, at *5

-23-

(S.D.N.Y. May 4, 2017), *aff'd in relevant part*, 719 F. App'x 33 (2d. Cir. 2017) (dismissing

unjust enrichment claim seeking overdraft fees allegedly assessed in violation of the parties'

written agreement governing their dispute); *Cox v. NAP Constr. Co.*, 10 N.Y.3d 592, 607 (2008)

(holding a party may not recover in unjust enrichment where the parties have entered into a

contract that governs the subject matter).

## IV.   PLAINTIFF'S GBL CLAIM FAILS BECAUSE IT MERELY RESTATES HIS BREACH OF CONTRACT CLAIM.

Because Plaintiff's GBL § 349 cause of action merely restates Plaintiff's breach of

contract claim, Plaintiff's claim should be dismissed for yet another reason.

To successfully assert a claim under GBL § 349, "a plaintiff must allege that a defendant

has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that

(3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker,

Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012).

Here, Plaintiff alleges that Capital One violated GBL § 349 by failing to disclose and

misrepresenting in the Account Agreements that it may assess an NSF or OD fee on transactions

Plaintiff authorized a third-party to resubmit to the Bank for payment where Plaintiff did not

have sufficient funds in his account.  (Compl. ¶¶ 101-105.)  In other words, this claim is based

on the same allegations as Plaintiff's contract claim (*i.e.*, that NSF or OD fees on resubmitted

ACH transactions violate the parties' contract), which, as discussed above, has no merit.

Because Capital One's practice complied with the Account Agreements, there is no "materially

misleading conduct supporting the claim."  *See, e.g.*, *Mendez v. Bank of Am. Home Loans

Servicing, LP*, 840 F. Supp. 2d 639, 659 (E.D.N.Y. 2012) (dismissing GBL claim and breach of

contract claim where the parties' contract contained no "express limitation on the appropriate

amount of default-related servicing fees," and therefore was not misleading).

Where a plaintiff does nothing more than parrot the allegations underlying his breach of contract claim, courts routinely dismiss GBL § 349 claims. *Costoso*, 74 F. Supp. 3d at 575 (dismissing GBL § 349 claim and finding plaintiff failed to allege anything more than "the [d]efendant failed to satisfy its contractual duties[,]" or "that it concealed or misrepresented any contractual terms"); *see also Lucker v. Bayside Cemetery*, 114 A.D.3d 162, 175 (1st Dep't 2013) (concluding plaintiff failed to a state § 349 claim where the conduct complained of was "essentially that defendants failed to satisfy their contractual duties"). Here, Plaintiff does not allege that he suffered any loss from Capital One's allegedly deceptive practices that is independent of the loss caused by Capital One's alleged breach of contract. *See In re Cablevision Consumer Litig.*, 864 F. Supp. 2d 258, 267 (E.D.N.Y. 2012) (dismissing § 349 claim where alleged injury was identical to that alleged under contract claim).

Plaintiff's GBL claim also fails because he has not alleged that he suffered injury *as a result* of any alleged misrepresentation by Capital One. Plaintiff has not shown how, if at all, any materially deceptive acts or practices caused him actual harm. *Gale v. Int'l Bus. Machines Corp.*, 9 A.D.3d 446, 447 (2d Dep't 2004). And, he has not alleged that he ever read the Account Agreements to satisfy causation. *See, e.g.*, *Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 263 (E.D.N.Y. 2012) (concluding that the plaintiff could not have been injured by statements in letters that she never received); *Gale*, 9 A.D.3d at 447 (declining to find that plaintiff alleged causation where he did not see any of the challenged statements before purchasing computer). Therefore, this claim should be dismissed.

## CONCLUSION

For all the foregoing reasons, Capital One requests the Court grant its Motion to Dismiss in its entirety, with prejudice.

ny-1718108

Dated: August 16, 2019                    MORRISON & FOERSTER LLP

                                          By:      /s/ Jessica Kaufman

                                              Jessica Kaufman
                                              Tiffani Figueroa
                                              250 West 55th Street
                                              New York, New York 10019
                                              Telephone: (212) 468-8000
                                              jkaufman@mofo.com
                                              tfigueroa@mofo.com

                                              James R. McGuire (*pro hac vice*)
                                              Sarah Davis *(pro hac vice)*
                                              Lauren Erker *(pro hac vice)*
                                              425 Market Street
                                              San Francisco, California
                                              Telephone: (415) 268-7000
                                              jmcguire@mofo.com
                                              sarahdavis@mofo.com
                                              lerker@mofo.com

                                              *Attorneys for Defendant Capital One, N.A.,
                                              erroneously sued as "Capital One Bank, N.A."*

ny-1718108