# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

BOB MCNEIL, individually and on behalf of
all others similarly situated,

<em>Plaintiff,</em>

- against -

CAPITAL ONE BANK, N.A.,

<em>Defendant.</em>

Case No. 1:19-cv-00473-NRM-TAM

September 15, 2023

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 1

    I.      Litigation History .......................................................................................... 1

    II.     Class Counsel's Investigation .................................................................... 5

    III.    Summary of Settlement .............................................................................. 5

         A.     The Settlement Class ........................................................................ 6

         B.     Settlement Fund & Settlement Administration Costs ............... 6

         C.     Settlement Release ............................................................................ 8

         D.     The Notice Program ........................................................................ 8

         E.     Settlement Administration ............................................................. 10

         F.     Settlement Termination .................................................................. 12

         G.     Class Representative's Service Award ......................................... 12

         H.     Attorneys' Fees and Costs ............................................................. 13

LEGAL STANDARD ............................................................................................................ 13

ARGUMENT .......................................................................................................................... 14

    I.      The Settlement Satisfies the Criteria for Preliminary Approval. ....... 14

         A.     Plaintiff and Class Counsel Adequately Represented the Settlement Class. ...................................................................... 15

         B.     This Settlement Is the Product of Good Faith, Informed and Arm's Length Negotiations. .................................................. 15

         C.     The Settlement Is Fair, Adequate and Reasonable. ................. 16

             1.     The Risks of Establishing Liability and Damages Demonstrate That This Settlement is Within the Range of Reasonableness in Light of All Attendant Risks of Litigation and Relative to the Best Possible Recovery. ........................... 17

             2.     The Expense, Complexity, and Likely Duration of Further Litigation Favor Settlement. ................................................... 21

             3.     The Risk of Maintaining Class Action Status Throughout Trial Favors Settlement. .......................................................... 22

             4.     The Extent of Discovery Completed and the Stage of the Proceedings Favor Settlement. ............................................... 23

             5.     Effectiveness of Distributing Relief, the Release, and Equitable Treatment of Class Members Favor Approval. ..................... 24

             6.     The Terms of Any Proposed Award of Attorneys' Fees Favor Approval. ...................................................................... 25

II.     Certification of the Settlement Class is Appropriate...........................................................25

III.    The Court Should Approve the Proposed Notice Program. ...............................................29

IV.    The Court Should Appoint Plaintiff's Counsel as Class Counsel. ...................................30

CONCLUSION .........................................................................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Am. Medical Ass'n v. United Healthcare Corp.*,
    No. 00 Civ. 2800 (LMM), 2009 WL 1437819 (S.D.N.Y. May 19, 2009)................................16

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ...................................................................................................25, 27

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
    No. 07 Civ. 2207(JGK), 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ................................22

*Bodnar v. Bank of Am., N.A.*,
    No. CV 14-3224, 2016 WL 4582084 (E.D. Pa. Aug. 4, 2016) ...........................................19

*Charron v. Weiner*,
    731 F.3d 241 (2d Cir. 2013) ...........................................................................................21

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...........................................................................................16

*D'Alauro v. GC Services Ltd. P'ship*,
    168 F.R.D. 451 (E.D.N.Y. 1996) .....................................................................................27

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)........................................................................................15, 17

*Davis v. J.P. Morgan Chase & Co.*,
    775 F. Supp. 2d 601 (W.D.N.Y. 2011) .............................................................................14

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ...........................................................................................28

*Dietrich v. Bauer*,
    192 F.R.D. 119 (S.D.N.Y. 2000) .....................................................................................26

*Dupler v. Costco Wholesale Corp.*,
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) .........................................................................17, 22

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
    104 F. Supp. 3d 290 (E.D.N.Y. 2015) ..............................................................................24

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)..............................................................................................16

*Hall v. ProSource Techs., LLC*,
    No. 14-CV-2502 (SIL), 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016)............................13, 23

*Hawthorne v. Umpqua Bank*,
    No. 11-CV-06700-JST, 2015 WL 1927342 (N.D. Cal. Apr. 28, 2015).................................19

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ...................................................................................18

*In re 3D Sys. Sec. Litig.*,
    No. 21-CV-1920 (NGG) (TAM), 2023 WL 4621716 (E.D.N.Y. July 19, 2023) ...................14, 17, 25

*In re Checking Acct. Overdraft Litig.*,

No. 1:09-MD-02036-JLK, 2015 WL 12641970 (S.D. Fla. May 22, 2015) ...............................19

*In re Crazy Eddie Sec. Litig.,*
824 F. Supp. 320 (E.D.N.Y. 1993) ...............................................................................22

*In re Drexel Burnham Lambert Grp., Inc.,*
960 F.2d 285 (2d Cir. 1992) ..........................................................................................15

*In re Giant Interactive Grp., Inc. Sec. Litig.,*
279 F.R.D. 151 (S.D.N.Y. 2011) ...................................................................................25

*In re Glob. Crossing Sec. & ERISA Litig.,*
225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................................18

*In re GSE Bonds Antitrust Litig.,*
414 F. Supp. 3d 686 (S.D.N.Y. 2019) .....................................................................17, 24

*In re Indep. Energy Holdings PLC Sec. Litig.,*
No. 00 Civ. 6689(SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ......................18

*In re PaineWebber Ltd. P'ships Litig.,*
171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................................18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
330 F.R.D. 11 (E.D.N.Y. 2019) ...........................................................................passim

*In re Sinus Buster Prod. Consumer Litig.,*
No. 12-CV-2429 (ADS)(AKT), 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) .............17, 22, 23, 27

*In re Visa Check/MasterMoney Antitrust Litig.,*
280 F.3d 124 (2d Cir. 2001) ..........................................................................................28

*In re: Checking Acct. Overdraft Litig.,*
No. 1:09-MD-02036-JLK, 2013 WL 11319242 (S.D. Fla. Aug. 2, 2013) ......................20

*In re: Checking Acct. Overdraft Litig.,*
No. 1:09-MD-02036-JLK, 2013 WL 11319244 (S.D. Fla. Aug. 2, 2013) ......................20

*In re: Checking Acct. Overdraft Litig.,*
No. 1:09-MD-02036-JLK, 2013 WL 11320088 (S.D. Fla. Aug. 2, 2013) ......................20

*Jenkins v. Trustmark Nat'l Bank,*
300 F.R.D. 291 (S.D. Miss. 2014) .................................................................................20

*Johnson v. Cmty. Bank, N.A.,*
No. 3:12-CV-01405, 2013 WL 6185607 (M.D. Pa. Nov. 25, 2013) ..............................20

*Kindle v. Dejana,*
315 F.R.D. 7 (E.D.N.Y. 2016) .......................................................................................27

*Lunsford v. Woodforest Nat'l Bank,*
No. 1:12-CV-103-CAP, 2014 WL 12740375 (N.D. Ga. May 19, 2014) ........................20

*Massiah v. MetroPlus Health Plan, Inc.,*
No. 11-CV-05669 BMC, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)........................20

*Matter of HSBC Bank U.S.A. N.A. Checking Account Overdraft Litig.,*
2015 NY Slip Op 51582(U) N.Y.S.3d 847 (Sup. Ct.) ...................................................19

*McLaughlin v. IDT Energy*,
No. 14CV4107ENVRML, 2018 WL 3642627 (E.D.N.Y. July 30, 2018)...............................17

*Mosser v. TD Bank, N.A.*,
No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 187627 (S.D. Fla. Mar. 18, 2013) ......................20

*Mullane v. Central Hanover Navy Federal & Trust Co.*,
339 U.S. 306 (1950) .............................................................................29

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ...................................................................17

*Odom v. Hazen Transport, Inc.*,
275 F.R.D. 400 (W.D.N.Y. 2011) .............................................................22

*Ortega v. Uber Techs. Inc.*,
No. 15CV7387NGGJO, 2018 WL 4190799 (E.D.N.Y. May 4, 2018)................................13

*Pantelyat v. Bank of Am., N.A.*,
No. 16-CV-8964 (AJN), 2019 WL 402854 (S.D.N.Y. Jan. 31, 2019) .............................9

*Roberts v. Capital One, N.A.*,
No. 1:16-cv-04841-LGS (S.D.N.Y. Dec. 1, 2020) (Dkt. 199) ...................................19

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ...................................................................26

*Rosenfeld v. Lenich*,
No. 18-cv-6720, 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) ..................................18

*Saddle Rock Partners Ltd. v. Hiatt*,
No. 96-cv-9474-SHS, 2000 WL 1182793 (S.D.N.Y. Aug. 21, 2000) ...........................26

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
659 F.3d 234 (2d Cir. 2011) ...................................................................27

*Thompson v. Metropolitan Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003) ...............................................................18

*United States v. Glens Falls Newspapers, Inc.*,
160 F.3d 853 (2d Cir. 1998) ...................................................................21

*Wal-Mart Stores v. Visa U.S.A.*,
396 F.3d 96 (2d Cir. 2005).................................................................13, 15

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .............................................................................26

**Statutes**

28 U.S.C. § 1715(b).............................................................................29

**Other Authorities**

*Manual for Compl. Lit.* ....................................................................26, 29

**Rules**

Fed. R. Civ. P. 23..........................................................................passim

## INTRODUCTION

Plaintiff, Bob McNeil, respectfully moves for Preliminary Approval[1] of the Settlement Agreement and Release, attached hereto as ***Exhibit A***, which will resolve all claims against Capital One in the above-captioned Action. The Court should grant Preliminary Approval because the Settlement provides substantial relief for the Settlement Class and the terms of the Settlement are within the range of reasonableness and consistent with applicable law. Given the significant litigation risks, the Settlement – which provides for Capital One's cash payment of $16,000,000.00 – is a fair and reasonable result. The Settlement satisfies all Second Circuit criteria for settlement approval. One keystone of the Settlement is that all Settlement Class Members will automatically receive their pro rata share of the Net Settlement Fund, without submitting claim forms. The allocation plan fairly and adequately accounts for the value of each Settlement Class Member's individual claim. Considering the risks discussed below, this Settlement is fair and reasonable and merits Preliminary Approval.

## FACTUAL BACKGROUND

This class action seeks redress for Capital One's assessment of multiple NSF Fees, or one or more NSF Fees followed by an Overdraft Fee, on the same item. Plaintiff alleges that the assessment of such multiple fees is a breach of Capital One's agreements with Accountholders, a breach of the implied covenant of good faith and fair dealing, and a violation of New York General Business Law § 349. Capital One denies any wrongdoing or liability and maintains that its Overdraft Fee and NSF Fee practices and representations complied, at all times, with applicable laws and regulations and the terms of the account agreements with its Accountholders.

## I.      Litigation History

On January 24, 2019, Plaintiff filed a Class Action Complaint in the United States District

---

[1] All capitalized terms herein have the same meanings as those defined in Section II of the Settlement Agreement and Release.

Court for the Eastern District of New York seeking monetary damages and other relief from Capital One based on its allegedly unfair and misleading assessment of more than one NSF and/or Overdraft Fee on the same item. The Complaint asserted claims for breach of contract and breach of the implied covenant of good faith and fair dealing, violation of New York General Business Law § 349, and unjust enrichment. Dkt. 1.

On April 15, 2019, Capital One filed a pre-motion conference letter seeking to file a motion to dismiss the Complaint. Dkt. 15. Plaintiff responded to Capital One's pre-motion letter on April 22, 2019. Dkt. 23. The Court held a pre-motion conference on June 12, 2019, and then directed the Parties to brief Capital One's Motion to Dismiss. Dkt. 27. On November 4, 2019, Capital One filed its fully briefed Motion to Dismiss, including Plaintiff's Opposition to the Motion to Dismiss and Defendant's Reply in Support of the Motion to Dismiss. Dkt. 34. Subsequently, Plaintiff also filed several Notices of Supplemental Authority, and Capital One filed a response to a Notice of Supplemental Authority. Dkt. 42-46. On September 29, 2020, Judge Frederic Block issued the Memorandum and Order denying the Motion to Dismiss, except as to Plaintiff's claim for unjust enrichment. Dkt. 48.

On October 9, 2020, the Parties filed a proposed Case Management Plan, which the Court adopted on October 13, 2020, directing the Parties to proceed with discovery. Dkt. 49. Additionally, on November 2, 2020, Capital One filed its Answer to the Complaint. Dkt. 53.

Over the next two and a half years, the Parties continued to vigorously litigate the Action and engaged in full-fledged discovery, including substantial written discovery, consisting of interrogatories, document requests, and requests for admission. Both Parties produced documents, with Capital One producing approximately 79,631 pages, plus sample account-level transaction data for certain months during the Class Period. Plaintiff took two Fed. R. Civ. P. 30(b)(6) corporate representative depositions and deposed two other fact witnesses, and Capital One deposed Mr. McNeil. Plaintiff also subpoenaed Klein Bank, while Capital One subpoenaed National Automated Clearing House

Association and Santander Bank. Joint Declaration of Class Counsel ("Joint Decl.") (attached as ***Exhibit B***), at ¶ 10. Several discovery motions including letter motions seeking a joint protective order on confidential information, entry of a detailed ESI protocol, and additional time to complete discovery were filed. *Id*; Dkt. 56-61, 63, 66, 68-69, 85. The Parties extensively met and conferred on discovery issues over many months which they resolved without court intervention. Joint Decl. ¶ 10.

During discovery, Plaintiff disclosed two experts, Arthur Olsen and Armando Levy, Ph.D. Capital One disclosed two experts, Daniel Garrett, Ph.D. and William Albert. Each expert witness provided detailed expert reports. Each Party deposed the other Party's experts. *Id.*

On September 20, 2022, Capital One filed a pre-motion conference letter to move for summary judgment and attached to the letter motion its Statement of Material Facts and supporting exhibits. Dkt. 75. On October 4, 2022, Plaintiff filed his response to that letter, attaching his Statement of Material Facts and supporting exhibits. Dkt. 78. On October 7, 2022, Plaintiff also filed a pre-motion conference letter to move for class certification, a pre-motion conference letter on partial summary judgment, and pre-motion conferences letters to exclude the opinions of Capital One's experts, Dr. Garrett and Mr. Albert. Dkt. 82-84, 86-87. On October 14 and 21, 2022, Capital One responded to each of these letters. Dkt. 88-93. On November 2, 2022, Capital One filed pre-motion conference letters to exclude Plaintiff's experts, Dr. Levy and Mr. Olsen. Dkt. 101-102. On November 9, 2022, Plaintiff filed his responses to those letters. Dkt. 105-106.

At various times, the Parties discussed attending mediation. In November 2022, they agreed to do so and retained an experienced mediator, Simeon Baum, Esq., to conduct the mediation. The Parties also submitted mediation statements to the mediator. On December 15, 2022, the Parties attended a full day mediation in New York with Mr. Baum. Despite the Parties' best efforts, the Action did not settle that day, leading the Parties to continue litigating. Joint Decl. ¶ 11.

Following the re-assignment of the Action to Judge Nina Morrison, on January 6, 2023, the

Court held a pre-motion conference to address the various pending pre-motion conference letters identified above. As a result of that conference, the Court decided to proceed first with Plaintiff's motion for class certification and the Parties' related *Daubert* motions. Dkt. 112.

On February 6, 2023, Plaintiff served his motion for class certification. Dkt. 115. On March 24, 2023, Capital One served its opposition to that motion and its motions to exclude Dr. Levy's and Mr. Olsen's opinions. Dkt. 119. On April 25, 2023, Plaintiff served his reply in support of class certification, Plaintiff's motion to exclude Dr. Garrett's opinions, and oppositions to Capital One's motions to exclude Dr. Levy's and Mr. Olsen's opinions. Dkt. 123. On May 2, 2023, Plaintiff served his motion to exclude Mr. Albert's opinions, and, following with the bundling rule, the Parties filed the fully briefed motion for class certification. Dkt. 124-132. On May 3, 2023, Plaintiff served a pre-motion conference letter seeking to strike a declaration of a Capital One employee, to which Capital One responded on May 10, 20223. Dkt. 133, 135. On June 1, 2023, Capital One served its replies in support of the motions to exclude Mr. Levy's and Mr. Olsen's opinions, as well as its oppositions to the motions to exclude Dr. Garrett's and Mr. Albert's opinions. Dkt. 148, 150, 155, 156.

While briefing the above motions, the Parties continued to discuss the prospect of settlement, communicating at times directly and through Mr. Baum, and ultimately agreed to a second mediation session with Mr. Baum that took place over a full day on June 14, 2023. That day, the Parties agreed to the material terms of settlement and signed a term sheet effective June 14, 2023. Joint Decl. ¶ 12.

On June 16, 2023, Plaintiff filed a Notice of Settlement, alerting the Court that a Settlement was reached and asking to stay all deadlines pending the filing of the Agreement, along with a Motion for Preliminary Approval. Dkt. 161. The Court adjourned all deadlines and directed the filing of the Motion for Preliminary Approval by August 16, 2023. The Parties subsequently sought an extension of 30 days to file the Motion for Preliminary Approval, which the Court granted. Dkt. 162.

## II.     Class Counsel's Investigation

Class Counsel spent many hours investigating the claims of several potential plaintiffs against Capital One. Joint Decl. ¶ 8. Class Counsel interviewed a number of Capital One customers to gather information about Capital One's alleged conduct and its impact upon consumers. *Id.* This information was essential to Class Counsel's ability to understand the nature of Capital One's alleged conduct, the language of the Account agreement and other documents at issue, and potential remedies. *Id.*

Class Counsel expended significant resources to research and develop the claims. *Id.* ¶ 9. They are familiar with the claims as they have litigated and resolved several cases with similar factual and legal issues. *Id.* Class Counsel has experience in understanding the damages at issue, what information is critical in determining class membership, and what data is necessary to calculate each Settlement Class member's respective damages. *Id.* With their experienced data analysis expert, Class Counsel analyzed information regarding Capital One's revenue from fees assessed on re-presented debits. *Id.*

In sum, before agreeing to the Settlement, Class Counsel spent significant time communicating with the Plaintiff, investigating facts, researching the law, preparing a well-pled Complaint, opposing Defendant's Motion to Dismiss, conducting discovery, consulting with experts, preparing and responding to pre-motion conference letters for proposed summary judgment and *Daubert* motions, and briefing the motion for class certification and *Daubert* challenges to the Parties' experts. This resulted in the Settlement achieved for which Preliminary Approval is respectfully requested. *Id.* ¶ 14.

## III.    Summary of Settlement

Class Counsel has fully analyzed and evaluated the facts and underlying events related to the subject matter of the claims and has carefully analyzed the applicable legal principles. After taking into account the substantial risks of continued litigation and the likelihood that the Action, if not settled now, will be protracted and expensive, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate, and equitable, and that the Settlement is in the best interests

of the Settlement Class. *Id.* ¶ 15. The Parties did not discuss attorneys' fees and costs or any potential Service Award until they first agreed on the material terms of the Settlement, including the Settlement Class definition, Notice Program, Settlement Class benefits, and scope of relief. *Id.* ¶ 19.

## A.    The Settlement Class

The Settlement Class is Federal Rules of Civil Procedure 23(b)(3) opt-out class, defined as:

> [A]ll current and past Capital One checking Accountholders in the United States who were charged a Representment Fee, during the Class Period. Excluded from the Settlement Class is Capital One, its parents, subsidiaries, affiliates, officers and directors, all Accountholders who make a timely election to opt-out, and all judges assigned to this litigation and their immediate family members.

Agreement ¶ 48. The Class Period is September 1, 2015, through January 12, 2022. *Id.* ¶ 9.

## B.    Settlement Fund & Settlement Administration Costs

The Settlement consists of Capital One's commitment to establish a Settlement Fund of $16,000,000.00 for the benefit of the Settlement Class and to separately pay the Settlement Administration Costs estimated to be $194,009.00. Agreement ¶¶ 52, 56; Joint Decl. ¶ 17. The Settlement Fund will pay: (a) Settlement Class Members their Settlement Class Member Payments; (b) Class Counsel for any Court awarded attorneys' fees and litigation costs; (c) any Court awarded Service Award for the Class Representative; and (d) any Residual Funds as required under this Agreement. Agreement ¶ 56.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive Settlement relief in the form of a Settlement Class Member Payment. Instead, within 60 days following the Effective Date, the Net Settlement Fund will be distributed to Current Accountholders by a direct deposit Account credit and to Past Accountholders by paper check. *Id.* ¶ 82(a)-(b).

The Parties have agreed to distribute the Net Settlement Fund among all Settlement Class Members who are entitled to a Settlement Class Member Payment on a *pro rata* basis. Each Settlement Class Member Payment will be determined by dividing the Net Settlement Fund by the total of all

Representment Fees paid by all Settlement Class Members, in order to determine the per-fee amount, and then multiplying the per-fee amount by the number of Representment fees for each Settlement Class Member. *Id.* ¶ 79. Because each Settlement Class Member Payment is dependent on his or her specific Account activity and the number of Settlement Class Members, it is not possible to determine the likely recovery of each Settlement Class Member until this calculation is performed.

As soon as practicable, but no later than 50 days after the Effective Date, the Settlement Administrator shall transfer to Capital One the funds necessary for Defendant to credit the Accounts of Current Accountholders. *Id.* ¶ 82. Capital One will then credit the accounts of Current Accountholders within 60 days of the Effective Date. *Id.* If Capital One is unable to complete certain credits, or it is not feasible or reasonable to make the payment by a credit, Capital One will return the total amount of such unsuccessful Settlement Class Member Payment credits to the Settlement Administrator to be paid by check. *Id.*

Past Accountholders will be paid by check. *Id.* If a check is returned, the Settlement Administration will attempt to locate the proper address for any intended recipient (such as by running addresses of returned checks through the Lexis/Nexis database that can be utilized for such a purpose), and will re-mail it once to the updated address, or, in the case of a jointly held Account, and in the Settlement Administrator's discretion, to an Accountholder other than the one listed first. *Id.* Capital One shall bear all costs associated with the process of printing and mailing checks and communications to Past Accountholders.

Within one year after the date the Settlement Administrator mails the first Settlement Class Member Payment, any Residual Funds shall be distributed (1) to Capital One in an amount up to the amount that it paid for Settlement Administration Costs, (2) on a *pro rata* basis to Settlement Class Members who received Settlement Class Member Payments, to the extent financially feasible and practical, and (3) if a further *pro rata* distribution is not feasible, or funds remain following a second

distribution, to a *cy pres* recipient approved by the Court. *Id.* ¶ 84.

### C.    Settlement Release

The Settlement includes a release of claims against Capital One and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and the present and former directors, officers, employees, agents, insurers, members, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, and successors, from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, that arise from or relate to Defendant's assessment of Representment Fees, and claims that were asserted or could possibly have been asserted in the Action relating to NSF Fees or OD Fees on ACH debits or Checks that were re-presented for payment, on or after September 1, 2015. *Id.* ¶¶ 38-39.

### D.    The Notice Program

The Settlement Administrator is Angeion Group, which if appointed by the Court will oversee the Notice Program and settlement administration. Joint Decl. ¶¶ 16-17. The Notice Program is designed to provide the best notice practicable and is tailored to take advantage of the information Capital One has available about the Settlement Class. *Id.* ¶ 16. The Notice Program is reasonably calculated under the circumstances to apprise Accountholders in the Settlement Class of: a description of the material terms of the Settlement; a deadline by which Accountholders in the Settlement Class may opt-out of the Settlement Class; a deadline by which Settlement Class Members may object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Award; the Final Approval Hearing, location, date, and time; and the Settlement Website address at which Accountholders in the Settlement Class may access this Agreement and other related documents and

information. Agreement ¶ 65 and Exs. 1-2 thereto. The Notices and Notice Program are sufficient notice to all persons entitled to notice and satisfies all applicable requirements of law, including, but not limited to, Fed. R. Civ. P. 23 and constitutional due process. Joint Decl. ¶ 16. Indeed, a very similar notice program was administered in *Pantelyat v. Bank of Am., N.A.*, No. 16-CV-8964 (AJN), 2019 WL 402854, at *3 (S.D.N.Y. Jan. 31, 2019), with the court noting it complied with "the requirements of Rule 23 and due process." S*ee also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 59 (E.D.N.Y. 2019) (approving a similar notice program).

The Notice Program has three components: (a) Email Notice to Accountholders for whom Defendant has email addresses if the Accountholder has agreed to receive electronic communications from Defendant; (b) Postcard Notice to those who have not agreed to receive electronic communications from Defendant, or for whom the Settlement Administrator is unable to send Email Notice using the email address provided by Defendant; and (c) Long Form Notice with greater detail than the Email Notice and Postcard Notice, which shall be available on the Settlement Website and/or via mail upon request by an Accountholder in the Settlement Class. Agreement ¶ 69.

Among the additional information provided, the Long-form Notice will describe the procedure that Settlement Class members must follow to (a) opt-out of the Settlement or (b) object to the Settlement and/or Class Counsel's Application for Attorneys' Fees, Costs and Service Award to the Plaintiff. *Id.* ¶¶ 66-67. Specifically, opt-out notices and objections must be postmarked no later than the last day of the Opt-Out Period and Objection Period (no later than 30 days before the original date scheduled for the Final Approval Hearing). *Id.* ¶¶ 28-29, 66-67.

For an objection to be considered by the Court, the objection must also set forth: (a) the name of the Action; (b) the objector's full name, address, email address (if any), and telephone number; (c) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (d) the number of times the objector has objected to a class action

settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (e) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or Application for Attorneys' Fees, Costs, and Service Award; (f) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years; (g) any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity; (h) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (i) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; (j) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (k) the objector's signature (an attorney's signature is not sufficient). *Id.* ¶ 68. The Notice Program will be completed no later than 60 days before the original date set for the Final Approval Hearing. *Id.* ¶ 73.

The Settlement Website will be established by the Settlement Administrator and will include hyperlinks to the Agreement, the Long Form Notice, the Preliminary Approval Order and such other documents as the Parties agrees to post or that the Court orders posted. *Id.* ¶ 53.

### E.    Settlement Administration

The Settlement Administrator is one of the leading class action settlement administrators in

the United States. Under the Agreement, the Settlement Administrator's responsibilities include:

1. Use the Settlement Class List provided by Defendant in connection with the Notice Program approved by the Court, for the purpose of sending the Email Notice and mailing the Postcard Notice, and later mailing distribution checks to Past Accountholder Settlement Class Members, and to Current Accountholder Settlement Class Members where it is not feasible or reasonable for Defendant to make the payment by a credit to the Settlement Class Members' Accounts;

2. Establish and maintain a post office box for requests to opt-out from the Settlement Class;

3. Establish and maintain the Settlement Website;

4. Establish and maintain an automated toll-free telephone line for Accountholders in the Settlement Class to call with Settlement-related inquiries, and answer the frequently asked questions of the Settlement Class who call with or otherwise communicate such inquiries;

5. Respond to any mailed Settlement Class inquiries;

6. Process all opt-out requests from the Settlement Class;

7. Provide weekly reports to Class Counsel and Defendant that summarize the number of opt-out requests received that week, the total number of opt-out requests received to date, and other pertinent information;

8. In advance of the Final Approval Hearing, prepare a declaration to submit to the Court confirming the Notice Program was completed, describing how the Notice Program was completed, providing the names of each Accountholder in the Settlement Class who timely and properly opted-out from the Settlement Class, and other information as may be necessary to allow the Parties to seek and obtain Final Approval.

9. Distribute Settlement Class Member Payments by check to Past Accountholder Settlement Class Members;

10. Provide to Defendant the amount of the Settlement Class Member Payments to Current Accountholder Settlement Class Members from the Settlement Fund and work with Defendant to initiate the credits of Settlement Class Member Payments to Current Accountholder Settlement Class Members.

11. If Residual Funds exist after the first distribution, repay Defendant for the amount of Settlement Administration Costs it paid;

12. Pay invoices, expenses, and costs upon approval by Class Counsel and Defendant, as provided in this Agreement; and

13. Any other Settlement-administration-related function at the instruction of Class

Counsel and Defendant, including, but not limited to, verifying that the Settlement Fund has been distributed.

Agreement ¶ 62.

### F.     Settlement Termination

Either Party may terminate the Settlement if the Parties agree to termination, or if the Settlement is rejected or materially modified by the Court or an appellate court. Agreement ¶ 98. Capital One also may terminate the Settlement if the number of Settlement Class members who timely request exclusion from the Settlement Class equals or exceeds 5% of the Settlement Class. *Id.* ¶ 99.

### G.     Class Representative's Service Award

Class Counsel may seek a Service Award not to exceed $5,000.00 for the Class Representative. *Id.* ¶ 95. The Service Award will be paid from the Settlement Fund and will be in addition to the Plaintiff's Settlement Class Member Payment. *Id.* The Service Award will compensate the Class Representative for his time and effort and for the risks he assumed in prosecuting the Action. Joint Decl. ¶ 18. Specifically, Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding documents and information to Class Counsel; (3) participating in conferences with Class Counsel; and (4) working with Class Counsel to provide written discovery responses (5) sitting for a lengthy deposition; and (6) reviewing the proposed Settlement with Class Counsel and discussing its terms. In so doing, Plaintiff was integral to the case. Indeed, he was the catalyst for this entire Action and without his service to the Settlement Class, it would not have been successful. *Id.* Further, "Courts regularly grant requests for service awards in class actions 'to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.'" *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *9 (E.D.N.Y.

Apr. 11, 2016). Upon seeking Final Approval of the Settlement, Plaintiff will identify the amount of the Service Award that will be sought.

**H.    Attorneys' Fees and Costs**

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs incurred. Class Counsel is entitled to request, and Capital One will not oppose, attorneys' fees of up to 33.33% of the Value of the Settlement (the Settlement Fund plus Settlement Administration Costs), as well as reimbursement of litigation costs incurred in connection with the Action. Agreement ¶ 91; Joint Decl. ¶ 19. The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all material Settlement terms. Joint Decl. ¶ 19. Such an award is subject to Court approval and will compensate for the time, risk, and expenses incurred pursuing the class claims.

## LEGAL STANDARD

Courts, including the Second Circuit, have emphasized the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005); *Ortega v. Uber Techs. Inc.*, No. 15CV7387NGGJO, 2018 WL 4190799, at *2 (E.D.N.Y. May 4, 2018) ("the court should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks.") (internal quotation marks omitted).

To assess the likelihood of final approval of a class settlement at the preliminary approval stage, courts apply the following Fed. R. Civ. P. 23(e)(2) factors:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3);[2] and (D) the proposal treats class members equitably relative to each other.

The Court must examine the Settlement's procedural fairness under Rule 23(e)(2)(A)-(B) and substantive fairness under 23(e)(2)(C)-(D). *In re 3D Sys. Sec. Litig.*, No. 21-CV-1920 (NGG) (TAM), 2023 WL 4621716, at *4 (E.D.N.Y. July 19, 2023).

"A proposed settlement of a class action should . . . be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011) (granting preliminary approval) (internal quotation marks and citation omitted).

## ARGUMENT

**I.      The Settlement Satisfies the Criteria for Preliminary Approval.**

The relevant factors weigh in favor of Preliminary Approval of this Settlement. First, Plaintiff and Class Counsel have adequately represented the Settlement Class. Second, the Settlement was reached without collusion and in good faith after informed and arm's length negotiations by competent counsel with an experienced mediator's assistance. Furthermore, a review of the fairness, adequacy, and reasonableness of the Settlement demonstrates that is should be preliminarily approved.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiff believes the claims asserted are meritorious and would prevail if this matter proceeded to trial. Capital One argues Plaintiff's claims are unfounded, denies any potential liability, and up to the point of settlement has indicated a willingness to litigate those claims vigorously. The Parties concluded the settlement benefits outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated

---

[2] There is no such agreement to be identified. The only agreement is the Settlement Agreement.

with contested class-certification proceedings and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and finally appellate review. Joint Decl. ¶ 21.

### A.     Plaintiff and Class Counsel Adequately Represented the Settlement Class.

Adequacy of representation is an issue traditionally considered in connection with class certification and involves two questions: (1) whether the class representative will vigorously pursue the class claim and has interests antagonistic to other class members' interests; and (2) whether the proposed class counsel has the necessary qualifications and experience to lead the litigation. *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). Here, Plaintiff is an adequate representative. He has interests and injuries similar to other Settlement Class members. He has also pursued this Action vigorously by actively seeking out counsel, approving the Complaint, participating in discovery, and monitoring the lawsuit in an effort to obtain the maximum recovery for both himself and the Settlement Class. Likewise, Class Counsel are experienced in complex class action litigation, including breach of contract and consumer protection claims involving bank fees like those challenged in this Action. Joint Decl., Ex. 1-4 (firm resumes). They continue to act with diligence, skill, and professionalism. Thus, Rule 23(e)(2)(A) is satisfied.

### B.     This Settlement Is the Product of Good Faith, Informed and Arm's Length Negotiations.

The Settlement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action after two mediations. Joint Decl. ¶ 20. In assessing procedural fairness, courts examine the negotiating process leading to the settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). A strong initial presumption of fairness attaches to the proposed settlement if, as here, the settlement is reached after discovery by experienced counsel and after arm's length negotiations with a mediator's assistance. *Id.*; *Wal-Mart Stores, Inc.*, 396 F.3d at 116. Thus, Rule 23(e)(2)(B) is satisfied.

Furthermore, Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class actions. Joint Decl. ¶ 7. In negotiating this Settlement in particular, Class Counsel benefitted from years of experience and familiarity with the facts of this case as well as with other similar cases against financial institutions. *Id.* As detailed above, Class Counsel thoroughly investigated and analyzed Plaintiff's claims, and the Parties engaged in extensive liability and damages discovery. Class Counsel's review enabled them to understand the evidence related to central questions in the case and prepared them for well-informed settlement negotiations. Class Counsel was also well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, and the appropriate basis upon which to settle them given their experiences in other similar cases. *Id.*

### C.     The Settlement Is Fair, Adequate and Reasonable.

A preliminary review of Rule 23(e)(2)(C)'s substantive factors quoted above support a Preliminary Approval under Rule 23(e)(1). The Second Circuit's nine *Grinnell* factors supplement that rule's factors to determine a proposed settlement's substantive fairness:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). While the *Grinnell* factors are routinely considered in connection with final approval of class action settlements, they are considered a "useful guide" at the preliminary approval stage as well. *Am. Medical Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800 (LMM), 2009 WL 1437819, at *3-4 (S.D.N.Y. May 19, 2009). "In applying these factors, not every factor must weigh in favor of the settlement, but rather the court should consider

the totality of these factors in light of the particular circumstances." *McLaughlin v. IDT Energy*, No. 14CV4107ENVRML, 2018 WL 3642627, at *6 (E.D.N.Y. July 30, 2018) (internal quotation marks and citation omitted). As applied here, the *Grinnell* factors weigh heavily in favor of Preliminary Approval.[3] Even after Rule 23 was amended to enumerate additional factors to consider in evaluating a proposed settlement, "[t]he Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement, rather than displace the[] 'Grinnell' factors." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).

      **1.**      **The Risks of Establishing Liability and Damages Demonstrate That This Settlement is Within the Range of Reasonableness in Light of All Attendant Risks of Litigation and Relative to the Best Possible Recovery.**

"The range of reasonableness of the settlement in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation, are two *Grinnell* factors that are often combined for the purposes of analysis." *Payment Card*, 330 F.R.D. at 47-48. The Court need only determine if the Settlement falls within a "range of reasonableness" which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Fundamentally, "courts must assess whether the proposed settlement 'results in substantial and tangible present recovery, without the attendant risk and delay of trial.'" *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *6 (quoting *Rosenfeld v. Lenich*, No. 18-cv-6720,

---

[3] The sole *Grinnell* factor which does not favor settlement is the ability of the defendant to withstand a larger settlement; however, this standing alone is not reason to reject the Settlement. *In re Sinus Buster Prod. Consumer Litig.*, No. 12-CV-2429 (ADS)(AKT), 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) (collecting cases). "Given the circumstances of the case, however, and the fact that all of the other *Grinnell* factors weigh in favor of the Settlement, 'this factor alone does not suggest the settlement is unfair.'" *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 241 (E.D.N.Y. 2010) (quoting *D'Amato*, 236 F.3d at 86). Another factor, the reaction of the class to the settlement, cannot be gauged prior to the Notice Program.

2021 WL 508339, at *5 (E.D.N.Y. Feb. 11, 2021)).

Plaintiff and Class Counsel are confident in the strength of the case, but they are also pragmatic in their awareness of the various defenses available to Capital One, and the risks inherent to litigation and establishing both liability and damages. Joint Decl. ¶ 25. This is a crucial factor favoring settlement, as Courts routinely approve settlements where plaintiffs would have faced significant legal and factual obstacles to establishing liability. *Payment Card*, 330 F.R.D. at 37-38; *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 63 (S.D.N.Y. 2003). Indeed, "[l]itigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).[4]

The dispute centers on Capital One's allegedly improper assessment of Representment Fees on a single item. With this Settlement, Plaintiff has achieved his desired goal of compensating class members charged those fees during the Class Period. While Plaintiff's best-case scenario is a 100% refund of money Capital One assessed in Representment Fees on a single item, there was a substantial risk that Plaintiff would not achieve such a result. Joint Decl. ¶ 23.

Prior to settlement, Capital One filed its opposition to Plaintiff's Motion for Class Certification. While Plaintiff certainly disagrees with the points raised by Capital One in its opposition, Capital One has raised potentially plausible defenses that could threaten the viability of the Action. Among other things, Capital One contends that Plaintiff lacks standing to assert claims for certain accountholders, that Plaintiff is subject to unique defenses and is thus atypical of the Class, that

---

[4] *See also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (noting few jury trials result in "the full amount of damages claimed").

proving damages will require individualized inquiries, that variations in state contract law and the contract language at issue will defeat predominance, and that the Class includes individuals lacking Article III standing. Although Plaintiff believes he has strong arguments on the merits of these issues, it is possible that Plaintiff's Motion for Class Certification would have been defeated by one or more of Capital One's arguments. Joint Decl. ¶ 24.

The $16,000,000.00 Settlement Amount—accounting for approximately 53%[5] of the estimated allegedly improper fees paid by the Settlement Class—provides an exceedingly fair and reasonable recovery without the risks inherent to this litigation. *Id.* ¶ 15. Indeed, it is a very good result by comparison to results in other overdraft cases. This Settlement either meets or exceeds the vast majority of court-approved recoveries in overdraft fee class actions nationwide. *See, e.g., Roberts v. Capital One, N.A.*, No. 1:16-cv-04841-LGS (S.D.N.Y. Dec. 1, 2020) (Dkt. 199) (approving a cash fund representing approximately 35% of relevant overdraft fees alleged by plaintiff); *Bodnar v. Bank of Am., N.A.*, No. CV 14-3224, 2016 WL 4582084, at *4 (E.D. Pa. Aug. 4, 2016) (approving a cash fund of between 13 and 48 percent of the maximum amount of damages they may have been able to secure at trial, and describing such a result as a "significant achievement" and outstanding"); *Matter of HSBC Bank U.S.A. N.A. Checking Account Overdraft Litig.*, 2015 NY Slip Op 51582(U), ¶ 8, 29 N.Y.S.3d 847 (Sup. Ct.) (approving $30 million settlement represents approximately 50% of the actual damages sustained); *In re Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2015 WL 12641970, at *9 (S.D. Fla. May 22, 2015) (approving $31,767,200 settlement that represented approximately 35% of the most probable aggregate damages); *Hawthorne v. Umpqua Bank*, No. 11-CV-06700-JST, 2015 WL 1927342, at *3 (N.D. Cal. Apr. 28, 2015) (approving $2.9 million settlement that was approximately 38% of what could have been obtained at trial); *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 305

---

[5] Plaintiff's expert's analysis of the classwide data Capital One will produce to identify Accountholders in the Settlement Class and their Representment Fees will aid in confirming this percentage.

(S.D. Miss. 2014) (approving $4,000,000 settlement that was 46.5% of the most probable aggregate damages); *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-CV-103-CAP, 2014 WL 12740375, at *9 (N.D. Ga. May 19, 2014) (approving $7,750,000 settlement that was 49% of total recoverable damages); *Johnson v. Cmty. Bank, N.A.*, No. 3:12-CV-01405, 2013 WL 6185607, at *5 (M.D. Pa. Nov. 25, 2013) (approving $2,500,000 settlement that was roughly 50% of most likely recoverable damages); *In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11320088, at *8 (S.D. Fla. Aug. 2, 2013) (approving $2,200,000 settlement that was roughly 50% of the most probable recoverable damages); *In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319244, at *8 (S.D. Fla. Aug. 2, 2013) (approving $13,000,000 settlement with Associated Bank that was approximately 51% of the most probable recoverable damages); *In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319242, at *8 (S.D. Fla. Aug. 2, 2013) (approving $4,000,000 settlement that was 25% of the most probable recoverable damages); *Mosser v. TD Bank, N.A.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 187627, at *83-84 (S.D. Fla. Mar. 18, 2013) (approving $62,000,000 settlement that was 42% of the most probable damages as an "outstanding result").

Plaintiff also risked losing at summary judgment, at trial, or on appeal based on Capital One's various defenses. The success of Plaintiff's claims in future litigation turns on these and other questions certain to arise in the context of motions for summary judgment and at trial, as they have in other similar cases. Each of these risks, by itself, could easily have impeded Plaintiff's and the Settlement Class's successful prosecution of these claims at trial and in an eventual appeal. Under the circumstances, Plaintiff and Class Counsel appropriately determined that the Settlement reached with Capital One outweighs the gamble of continued litigation. Joint Decl. ¶ 26. Moreover, even if Plaintiff prevailed at trial, any recovery could be delayed for years by an appeal. "Settlement eliminates the risk, expense, and delay inherent in this process." *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-CV-05669 BMC, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012). This Settlement provides substantial relief

to Settlement Class Members without further delay. Joint Decl. ¶ 27.

Further, as discussed above, the Settlement is the product of arm's-length negotiations conducted by the Parties' experienced counsel following two mediations. *Id.* ¶ 20. As a result of these negotiations, the Parties have reached a $16,000,000.00 cash Settlement that Class Counsel believes to be fair, reasonable, and in the Settlement Class's best interests in light of Capital One's defenses and the challenging and unpredictable litigation path in the absence of settlement. *Id.* ¶ 22.

### 2. *The Expense, Complexity, and Likely Duration of Further Litigation Favor Settlement.*

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and given the relatively small value of the claims of the individual Settlement Class Members is impracticable. Indeed, the complexity, expense, and likely duration of litigation is a critical factor in evaluating a class settlement's reasonableness. *Charron v. Weiner,* 731 F.3d 241, 247 (2d Cir. 2013). Settlements are favored in class actions, which "in general 'have a well-deserved reputation as being most complex'" for this reason. *Payment Card*, 330 F.R.D. at 36 (internal citations omitted).

Recovery by any means other than settlement would require additional years of litigation in this Court and the Second Circuit Court of Appeals. Delay, both at the trial stage, and through post-trial motions and the appellate process, could force the Class to wait even longer for any recovery, further reducing its value.[6]

Here, Settlement approval will mean a present recovery for Settlement Class Members. While Plaintiff believes the Action has merit and the class ultimately would prevail at trial, continued litigation

---

[6] *See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial").

would last for an extended period of time before any judgment might be entered. Even if Plaintiff succeeded in his Motion for Class Certification, the Parties would also have to litigate the Defendant's anticipated motion for summary judgment before proceeding to trial. *Dupler*, 705 F. Supp. 2d at 240 (that parties would have to litigate summary judgment weighs in favor of settlement approval).

Settling now with the benefit of the Settlement Class membership data that Capital One will provide as part of the Settlement provides immediate and substantial benefits to hundreds of thousands of customers and avoids significant and continuing litigation costs and risks. This consideration militates heavily in favor of the Settlement. *Sinus Buster Prods.*, 2014 WL 5819921, at *8. Thus, settling now on such favorable terms is in the best interests of the Settlement Class. *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 324 (E.D.N.Y. 1993) ("Even if the class plaintiffs were willing to assume each of these litigation risks, the passage of time would introduce yet more risks."). The proposed Settlement is the best vehicle for Settlement Class Members to promptly and efficiently to receive relief to which they believe they are entitled.

### 3. *The Risk of Maintaining Class Action Status Throughout Trial Favors Settlement.*

Whether the Action would have been tried as a class action is also relevant in assessing the Settlement's fairness. *Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400, 411 (W.D.N.Y. 2011) ("Although class certification has been approved by this Court for the purpose of settlement, it is not certain that the case would be certified in the absence of settlement."). As the Court has not yet ruled on Plaintiff's Motion for Class Certification, it is unclear whether certification would have been granted. Capital One vigorously opposed Plaintiff's certification motion and may have appealed if unsuccessful. The difficulty of certifying a class favors approving the Settlement. *Dupler*, 705 F. Supp. 2d at 241.[7] Further,

---

[7] *See also Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207(JGK), 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) (there "is no assurance of obtaining class certification through trial, because a court can reevaluate the appropriateness of certification at any time during the proceedings.").

this litigation activity would have required the Parties to expend significant resources. Joint Decl. ¶ 21. Accordingly, this factor weighs in favor of Preliminary Approval.

### 4. The Extent of Discovery Completed and the Stage of the Proceedings Favor Settlement.

This *Grinnell* factor requires that the parties have "engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the settlement." *Sinus Buster Prods.*, 2014 WL 5819921, at *9 (internal quotation omitted). This factor is "relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." *Hall*, 2016 WL 1555128, at *6 (quotation omitted). Here, Class Counsel devoted substantial time and resources to investigating, litigating, and resolving this case. Plaintiff settled the Action with the benefit of an analysis of key information regarding Capital One's assessment and collection of the fees at issue, following full discovery. Joint Decl. ¶¶ 9-10.

The Parties engaged in substantial discovery related to liability and damages, and both parties engaged experts. This informed the negotiations between counsel. As noted above, the review of this information positioned Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiff's claims and prospects for success at class certification, summary judgment, and trial. *Id.* The Parties and their counsel have sufficient information to assess and weigh the merits of claims and defenses, the risks attendant to continued litigation, and the benefits of settlement.

The record provides sufficient information for this Court to determine that the Settlement is fair. Further, there is no reason to doubt the Settlement's fairness. Plaintiff has litigated this Action for more than four years, and Class Counsel have been involved in similar litigation in the past. *Id.* The litigation has been hard-fought as the Parties have engaged in extensive motion practice and discovery. Accordingly, this factor also weighs in favor of preliminary approval.

In sum, Plaintiff's $16,000,000.00 recovery for the Settlement Class is a very good result given

the complexity of the litigation and the significant barriers that would loom in the absence of

settlement, including the pending Motion for Class Certification and the future prospect of summary

judgment, trial, and appeals after any verdict. The Settlement will afford Plaintiff and the Settlement

Class a recovery of 53% of their most probable damages, without further risks attendant to litigation.

*Id.* ¶ 15. That is a significant achievement considering the obstacles that Plaintiff faced in the litigation.

"When the settlement agreement assures immediate payment of substantial amounts to class members,

even if it means sacrificing speculative payment of hypothetically larger amounts years down the road,

settlement is reasonable." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 304

(E.D.N.Y. 2015) (cleaned up).

### 5.    *Effectiveness of Distributing Relief, the Release, and Equitable Treatment of Class Members Favor Approval.*

Consideration under the Rule 23(e)(2)(D) factor, which asks whether Class members are

treated equally relative to each other, also favors approval. Consideration here "could include whether

the apportionment of relief among class members takes appropriate account of differences among

their claims, and whether the scope of the release may affect class members in different ways that bear

on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

Because the Settlement distributes proceeds on a *pro rata* basis without requiring any claims be

submitted, Settlement Class Members will be treated equitably. Fed. R. Civ. P. 23(e)(2)(D). *See also In*

*re GSE Bonds*, 414 F. Supp. 3d at 698-99; *Payment Card*, 330 F.R.D. at 47. Further, the scope of the

release applies uniformly to Settlement Class Members and does not affect the apportionment of the

relief to them. *In re GSE Bonds*, 414 F. Supp. 3d at 698-99; *Payment Card*, 330 F.R.D. at 47. The Parties

explicitly agree the class release is not a general release of claims against Capital One. Agreement ¶ 38.

Rather, it is tailored to the Released Claims as expressly defined in the Settlement Agreement. *Id.*

Accordingly, this Court should find this factor will likely weigh in favor of granting final approval.

6.     *The Terms of Any Proposed Award of Attorneys' Fees Favor Approval.*

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs incurred. Under the Agreement, Class Counsel are entitled to request, and Capital One will not oppose, attorneys' fees of up to 33.33% of the Value of the Settlement, as well as reimbursement of litigation costs incurred in connection with the Action. Agreement ¶ 91; Joint Decl. ¶ 19. The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all material terms of the Settlement. Agreement ¶ 97; Joint Decl. ¶ 19. That award remains subject to this Court's approval and will compensate for the time, risk, and expenses incurred pursuing claims on Settlement Class Members' behalf. Accordingly, this Court should find that this factor will weigh in favor of granting final approval, and should reserve a full analysis of this factor for the final approval stage. *See, e.g.*, Fed. R. Civ. P. 23(e)(2)(C)(iii; *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *7 (preliminarily approving settlement, including requested award of "no more than one-third of the Settlement Amount" because "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) (approving fee award of 33% of $13 million settlement fund).

## II.   Certification of the Settlement Class is Appropriate.

Plaintiff requests the Court certify the Settlement Class for settlement purposes. In "settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Applying Rule 23(e)(1), the Court should conclude it will likely certify the Settlement Class and approve the Settlement as fair, adequate, and reasonable.

Certification of the proposed Settlement Class will allow notice of the proposed Settlement to issue to the Settlement Class to inform them of the existence and terms of the proposed Settlement; their right to be heard on its fairness; their right to opt-out; and of the date, time, and place of the

Final Approval Hearing. *See Manual for Compl. Lit.*, §§ 21.632, 21.633. For purposes of this Settlement only, Capital One does not oppose class certification. For the reasons set forth below, certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(3).

Certification under Fed. R. Civ. P. 23(a) requires: (1) the class be so numerous that joinder of all members is impracticable; (2) common questions of law or fact to the Settlement Class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the Settlement Class; and (4) the representative parties will fairly and adequately protect the interests of the Settlement Class. Fed. R. Civ. P. 23(b)(3) certification is appropriate if questions of law or fact common to the members of the class predominate over individual issues of law or fact, and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**Numerosity.** The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class is expected to consist of hundreds of thousands of Accountholders, and joinder of all such persons is impracticable. Joint Decl. ¶ 28. *See* Fed. R. Civ. P. 23(a)(1). "[A] plaintiff need not show that joinder is impossible. . . . Nor need the plaintiff know the exact number of class members." *Saddle Rock Partners Ltd. v. Hiatt*, No. 96-cv-9474-SHS, 2000 WL 1182793, at *2 (S.D.N.Y. Aug. 21, 2000) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).

**Commonality.** "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (citation omitted). "This does not mean that all class members must make identical claims and arguments, or that the circumstances of their . . . purchases must be the same," only that questions of law or fact are common to the class. *See Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000). "Further, even a single common legal or factual question will

suffice." *Sinus Buster Prods.*, 2014 WL 5819921, at *4 (cleaned up). Here, commonality is readily satisfied. There are multiple questions of law and fact – centering on Capital One's alleged systematic practice of assessing Representment Fees – that are common to the Settlement Class, are alleged to have injured all Settlement Class members in the same way, and would generate common answers central to the viability of the claims were the Action to be tried. Joint Decl. ¶ 29.

**Typicality.** For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent Accountholders in the Settlement Class, such that the Rule 23(a)(3) typicality requirement is satisfied. The typicality requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citation omitted).[8] There is no requirement that the claims of all members of a purported class be identical. Plaintiff is typical of absent Accountholders in the Settlement Class because he was subjected to the same Capital One practices leading to the assessment of Representment Fees and suffered from the same injuries, and he will benefit equally from the relief provided by the Settlement. Joint Decl. ¶ 30.

**Adequacy.** Plaintiff and Class Counsel satisfy the Rule 23(a)(4) adequacy of representation requirement, which "serves to uncover conflicts of the interest between named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. The analysis of whether a class representative is adequate "is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class

---

[8] Commonality and typicality tend to merge, as "[t]he crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Kindle v. Dejana,* 315 F.R.D. 7, 11 (E.D.N.Y. 2016) (citation omitted). Further, "[w]hen the same unlawful conduct was directed at both the named Plaintiff and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *D'Alauro v. GC Services Ltd. P'ship*, 168 F.R.D. 451, 456-57 (E.D.N.Y. 1996) (internal quotation marks and citation omitted).

members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)

. Here, Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Accountholders in the Settlement Class have the same interest in the relief afforded by the Settlement, and the absent Accountholders in the Settlement Class have no diverging interests. Joint Decl. ¶ 31. Further, Plaintiff is represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case. *Id.* Class Counsel has devoted substantial time and resources to this Action and will vigorously protect the interests of the Settlement Class. *Id.*

**Predominance.** Certification of the Settlement Class is further appropriate because the questions of law or fact common to Accountholders in the Settlement Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the Action. *See* Fed. R. Civ. P. 23(b)(3). For purposes of satisfying Rule 23(b)(3), "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (abrogated on other grounds). This is readily satisfied because liability questions common to all Accountholders in the Settlement Class substantially outweigh any possible issues that are individual to each member of the Settlement Class. Joint Decl. ¶ 29. For example, each Settlement Class member's relationship with Capital One arises from an agreement that is the same or substantially similar in all relevant respects to other Accountholders' Account agreements. *Id.*

**Superiority.** Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

## III.    The Court Should Approve the Proposed Notice Program.

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.* § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Navy Federal & Trust Co.*, 339 U.S. 306, 314 (1950). "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts. Those who cannot be readily identified must be given the best notice practicable under the circumstances." *Manual for Compl. Litig.*, § 21.311 (internal quotation marks omitted). Further:

> Courts in this Circuit have explained that a Rule 23 Notice will satisfy due process when it describe[s] the terms of the settlement generally, inform[s] the class about the allocation of attorneys' fees, and provide[s] specific information regarding the date, time, and place of the final approval hearing.

*Payment Card*, 330 F.R.D. at 58 (internal quotation marks and citation omitted).

The proposed Notice Program satisfies these content requirements. The Notice will properly inform Accountholders in the Settlement Class of the Settlement's substantive terms, their options for opting-out of or objecting to the Settlement, and how to obtain additional information about the Settlement. The Notice Program is designed to reach a high percentage of the Settlement Class by sending direct mail and email notices to the Settlement Class and exceeds the requirements of constitutional due process. Joint Decl. ¶ 16. Therefore, the Court should approve the Notice Program and the form and content of the Notices attached to the Agreement as Exhibits 1 and 2.[9]

---

[9] The Class Action Fairness Act requires a settling defendant to give notice of a proposed class action settlement to appropriate state and federal officials. 28 U.S.C. § 1715(b). Capital One will comply with this requirement.

## IV.     The Court Should Appoint Plaintiff's Counsel as Class Counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation, and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).  As detailed above, Class Counsel diligently investigated Plaintiff's claims, litigated extensively over more than four years, and have and will continue to devote substantial time and resources to this litigation. Class Counsel have extensive experience with similar class action litigation and have been appointed class counsel in many class actions, including many overdraft fee cases. As such, Class Counsel have an in-depth knowledge of the laws applicable to the Settlement Class members' claims and class certification. *See* Joint Decl., Ex. 1-4. Accordingly, the Court should appoint Plaintiff's counsel as Class Counsel for the proposed Settlement Class pursuant to Rule 23(g).

## CONCLUSION

Plaintiff respectfully requests the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Federal Rule of Civil Procedure Rule 23(a) and 23(b)(3); (3) appoint Plaintiff as Class Representative; (4) approve the Notice Program the form and content of the Notices attached to the Agreement; (5) approve and order the opt-out and objection procedures and deadlines set forth in the Agreement; (6) stay the Action against Capital One pending Final Approval of the Settlement; (7) appoint as Class Counsel the attorneys and law firms listed in Paragraph 8 of the Agreement; and (8) schedule a Final Approval Hearing no sooner than the week of April 29, 2024 (if convenient for the Court). For the Court's convenience, Plaintiff attaches as ***Exhibit C*** a Proposed Order Preliminarily Approving Class Settlement and Certifying Settlement Class, setting forth the deadlines referenced herein and in the Agreement.

Dated:  September 15, 2023

By: / s/ Jonathan Streisfeld
Jonathan M. Streisfeld (pro hac vice)
Jeffrey M. Ostrow (pro hac vice)
KOPELOWITZ OSTROW P.A.
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
streisfeld@kolawyers.com
ostrow@kolawyers.com
Telephone: (954) 525-4100

Sophia G. Gold (pro hac vice)
KalielGold PLLC
950 Gilman Street, Suite 200
Berkeley, CA 94710
sgold@kalielgold.com
Telephone: (202) 350-4783

Jeffrey D. Kaliel (pro hac vice)
KALIELGOLD PLLC
1100 15th Street NW
Washington, DC 20005
jkaliel@kalielpllc.com
Telephone: (202) 350-4783

Andrea R. Gold (pro hac vice)
Hassan Zavareei (pro hac vice)
Lauren Kuhlik (pro hac vice)
TYCKO & ZAVAREEI LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20036
agold@tzlegal.com
hzavareei@tzlegal.com
lkuklik@tzlegal.com
Telephone: (202) 973-0900

James Pizzirusso
HAUSFELD LLP
888 16th Street N.W., Suite 300
Washington, DC 20006
jpizzirusso@hausfeld.com
Telephone: (202) 540-7200

Steven M. Nathan
Scott Allan Martin
HAUSFELD LLP
33 Whitehall St., 14th Floor
New York, NY 10004
snathan@hausfeld.com
smartin@hausfeld.com
Telephone: (646) 357-1100

Counsel for Plaintiff and Putative Settlement Class